Argued and submitted August 18,
prisoner ordered released August 25, 1981

In the Matter of the Application of
Allen Isaac Carden for a Writ of
Habeas Corpus

CARDEN,
*Plaintiff,*
*v.*
BARNES,
*Defendant.*

(SC 28011)

635 P2d 341

Mark Griffin, Hillsboro, argued the cause for plaintiff.

Stephen F. Peifer, Assistant Attorney General Salem, argued the cause for defendant. With him on memorandum were Dave Frohnmeyer, Attorney General, and William F. Gary, Solicitor General.

Before Denecke, Chief Justice, and Lent, Linde, Peterson* and Campbell, Justices.

CAMPBELL, J.

* Peterson, J., did not participate in the decision of this case.

**CAMPBELL, J.**

This is an original habeas corpus proceeding filed in this court by the plaintiff, an inmate of the Washington County jail, seeking his release from the custody of defendant, the Sheriff of Washington County.

Plaintiff contends that Oregon law requires a judge or magistrate to make a release decision pending determination of a challenge to the validity of an extradition warrant, and that he has been wrongfully remanded to defendant's custody because the circuit court for Washington County declined to make such a decision under ORS 135.230 to 135.290. The issue therefore is: Is a judge or magistrate acting under the Oregon Uniform Criminal Extradition Act required to make a release decision as to a person who is in custody under a Governor's Extradition Warrant? This is a question of first impression in this state.

On April 25, 1981, as a result of a routine traffic stop, the plaintiff was arrested for being a fugitive from justice in the state of Virginia.[1]

On May 9, 1981, the plaintiff's security release amount was set at $15,000. The plaintiff was released upon the payment of a 10 percent deposit and the agreement of a Florence M. Martin that she would be "responsible for and supervise the within named (person) * * *."

On May 28, 1981, the governor of the state of Oregon issued a warrant of arrest and extradition authorizing any peace officer to take the plaintiff into custody for delivery to an agent of the State of Virginia. ORS 133.773.

On June 2, 1981, the plaintiff was arraigned on the Governor's Warrant and a release agreement on the same terms as the previous agreement was executed. On June 9, 1981, a new release agreement was executed and approved reducing the security amount to $7,500 with a 10 percent deposit. The matter was first continued until July 6, 1981,

---

[1] The affidavit of the Chairman of the Parole Board of the State of Virginia which was attached to the application for requisition says that the plaintiff was convicted of the crime of burglary in the State and has violated the terms of his parole.

and later to August 3, 1981, to "allow sufficient time for filing of a writ of habeas corpus."

On August 3, 1981, the plaintiff filed in the Circuit Court of Washington County a petition for writ of habeas corpus to test the legality of his arrest under the Governor's Warrant. ORS 133.787. The circuit judge announced that the judges of that judicial district had agreed as a matter of new policy that all defendants "would be in custody after the Governor's Warrant arrived and was served." He ordered: "Mr. Carden will be remanded to the custody of the Sheriff pending the outcome of these proceedings." As a follow-up on August 7, 1981, the court entered an order in which it found:

"Upon the filing of the Governor's Warrant of Arrest and Extradition, this Court lacks jurisdiction to make a release decision pursuant to ORS 133.809, regardless of the circumstances of a petitioner."

On August 6, 1981, the plaintiff filed his original petition for a writ of habeas corpus in this court, alleging that he is "entitled to bail" pursuant to ORS 133.809 in the Washington County habeas corpus case.[2]

This court issued a writ of habeas corpus and the return alleges the defendant has the plaintiff in custody pursuant to a valid Governor's Warrant of Arrest and Extradition.

On oral argument in this court the plaintiff contended that since the amendment of former ORS 147.160 and its reenactment as ORS 133.809 by the Oregon Legislature in 1973, a person in his position has the right to have the judge or magistrate make a release from custody decision.

On the other hand, the defendant sheriff argued that it was his primary position that the Oregon Uniform Criminal Extradition Act (ORS 133.743-133.857) "does not permit bail" for the arrested person after the execution and service of the Governor's Warrant.

---

[2] The petition for a writ of habeas corpus in this court also alleged that the plaintiff was entitled to a "release decision" in the Washington County habeas corpus case by virtue of the "inherent power" of that court. We do not consider that question because of the result we reach in this case.

The defendant contends that the legislature's intention is determined from the overall reading of the Act and not from just ORS 133.809. It is the defendant's secondary position that the federal statute, 18 USC § 3182, which provides that the "fugitive from justice" shall be "arrested and secured," prohibits a release from custody after the service of a Governor's Warrant.

We have previously decided that a prisoner is entitled to raise the question of his right to "bail" in an original habeas corpus proceeding in this court. *Price v. Zarbano,* 265 Or 126, 128, 508 P2d 182 (1973); *Thomas v. Gladden,* 239 Or 293, 397 P2d 836 (1964); *Delaney v. Shobe,* 218 Or 626, 346 P2d 126 (1959); *Mozorosky v. Hurlburt,* 106 Or 274, 198 P 556, 211 P 893 (1923). ORS 34.610 provides in part:

> "If it appears on the return that the prisoner is in custody by virtue of an order or civil process of any court legally constituted, or issued by an officer in the course of judicial proceedings before him, authorized by law, such a prisoner shall be discharged only if one of the following cases exists:"
>
> "* * * * *
>
> "(2) The original imprisonment was lawful, yet by some act, omission or event which has taken place afterwards, the party has become entitled to be discharged."

Extradition of fugitives between states is a federal question under the United States Constitution, Art IV, § 2, cl 2,[3] as implemented by 18 USC §3182.[4] The federal

---

[3]

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." US Const, Art IV, § 2, cl 2.

[4]

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such

constitutional and statutory provisions are controlling on the subject. *Innes v. Tobin,* 240 US 127, 36 S Ct 290, 60 LEd 562 (1915). Where state law conflicts with the federal provisions, it will be disregarded. *Walden v. Mosley,* 312 F Supp 855, 859 (ND Miss 1977). If federal law is unclear or silent, however, state law may be followed. *Id.* The federal extradition statute, 18 USC § 3182, requires that a "fugitive from justice" be "arrested and secured" pending extradition proceedings. The term "secured" has not been defined in the statute or authoritatively interpreted to mean "imprisoned" rather than other familiar means of securing that a person will be available for a legal proceeding. We believe the term is broad enough to encompass such other means. The absence of procedural detail for effecting extradition in the United States Constitution and the federal statute indicates that such matters are left to the states. *Sanders v. Conine,* 506 F2d 530, 532 (10th cir 1974); *Raffone v. Sullivan,* 436 F Supp 939, 940 (D Conn 1977).[5]

The question before us is procedural and will be determined under Oregon law.

■     The mechanics of the extradition process within a particular state are governed by the provisions of the Uniform Criminal Extradition Act as adopted by that state, insofar as they do not conflict with federal constitutional and statutory provisions.

Although the uniform act has been adopted by all fifty states, the exact provisions of a state's act may vary

---

person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged." 18 USC § 3182.

5

"A bail bond is process, and has no other function than to give assurance of attendance, so that there may be submission to the decrees of the court. In a case such as that before us, if the judgment reached is that the prisoner be extradited, the injunction of the statute must be followed; but if such judgment cannot be rendered, and the hearing must be held at a later date, then the court must enforce the attendance of the prisoner in some way, and we see no difference (again in the power sense) between one form of compulsion and another. The only difference is, as we have said, that one form acts upon his body; the other upon his will. It is true that a bond may not be effective but no more may a commitment. * * *" *In re Gannon,* 27 F2d 364, 365 (ED PA 1928).

from the official text. Uniform Criminal Extradition Act (ULA, 1936).[6] Oregon's version of the act, adopted in 1935, is presently codified in ORS 133.743 *et seq.* The act generally provides that, subject to the qualifications of the act and the provisions of the federal constitution and statutes, it is the duty of the Governor of Oregon to have a fugitive from another state who is found within Oregon arrested and delivered up to the executive authority of that state.

The act then sets forth the requirements which the demand for extradition must meet in order that the Governor of Oregon may recognize it and issue a Governor's Warrant authorizing the arrest of the fugitive for delivery to the agent of the demanding state.

After arrest on the Governor's Warrant, the prisoner has the right to be informed of the demand for his surrender, of the charge against him, of his right to counsel, and to be taken before a court and given a reasonable amount of time in which to contest the validity of the Governor's Warrant by application for a writ of habeas corpus; the prisoner cannot be delivered to the agent of the demanding state in violation of these rights. ORS 133.743 - ORS 133.797.

The act then addresses the situation where a person is charged with being a fugitive from another state and is arrested on a state fugitive warrant pending requisition by the demanding state and issuance of the Governor's Warrant by the Governor of Oregon. ORS 133.803 - ORS 133.807. ORS 133.809, which addresses the release of prisoners, and follows the portions of the act addressing arrest under a Governor's Warrant and arrest prior to requisition, provides as follows:

> "Unless the offense with which the prisoner is charged is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed, the judge or magistrate must make a release decision concerning the person arrested under ORS 135.230 to 135.290, for his appearance at a time specified in the security release or in the release agreement."

---

[6] Although the Uniform Act has been adopted in all 50 states, Louisiana, when it adopted the act in 1967, redrafted many sections while attempting to maintain their substance in the interests of conformity. La Code Crim Pro, art 261, *et seq.,* Preliminary Statement (West).

Defendant specifically contends, however, that despite the provisions of ORS 133.809, the act, taken as a whole, does not permit the release of a prisoner after a Governor's Warrant has issued. Defendant relied, in oral argument, upon the location of the release provisions within the act, upon the fact that a right to bail was not included within the provisions of ORS 133.787 addressing the rights of prisoners arrested upon a Governor's Warrant, and upon the fact that ORS 133.813 provides for issuance of subsequent security release agreements for the prisoner's "appearance and surrender" if he is not arrested on the Governor's Warrant by the time specified in the warrant or the release agreement.

Although the provisions of ORS 133.809 clearly require a court to hold a release hearing when the alleged crime is not punishable by death or life imprisonment in the demanding state, a reading of the act as a whole creates an ambiguity as to the scope of application of the release provisions. We turn to legislative history to aid in giving effect to the intent of the legislature. *State ex rel Cox v. Wilson,* 277 Or 747, 750, 562 P2d 172 (1977); *U.S. v. Amer. Trucking Ass'ns,* 310 US 534, 542-44, 60 S Ct 1059, 84 LEd 1345 (1930).

Former ORS 147.160, the predecessor to ORS 133.809, was amended and renumbered as part of the revision of the Oregon Criminal Procedure Code in 1973 Oregon Laws, Chapter 836, Section 125. Former ORS 147.160, prior to its amendment, provided as follows:

"Unless the offense with which the prisoner is charged is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed, the judge or magistrate must admit the person arrested to bail by bond or undertaking, with sufficient sureties and in such sum as he deems proper for his appearance before him at a time specified in such bond or undertaking, *and for his surrender, to be arrested upon the warrant of the Governor of this state."* (Emphasis supplied).

Thus, the statute as originally enacted specifically granted a prisoner the right to bail prior to his surrender for arrest upon the Governor's Warrant, while remaining silent on his right to bail once he was arrested on the warrant.

However, the Oregon Legislature deleted the emphasized portion of the statute,which limited the provision for "bail" to persons under arrest prior to surrender on the Governor's Warrant, *specifically* to achieve the result sought by the plaintiff in this case; i.e., to authorize the court to make a release decision concerning a prisoner subsequent to the issuance of a Governor's Warrant of Arrest for Extradition.

The Criminal Law Revision Commission's first draft of SB 80, issued in September of 1972, was identical with former ORS 147.160 as originally enacted. In hearings before the commission on October 2, 1972, a representative of the Multnomah County District Attorney's office urged that the statute be made clear one way or another regarding the court's power to release a person on bail under a Governor's Warrant, since courts which had considered the matter had not construed the existing statute uniformly.

The commission was considering proposed "housekeeping amendments" to conform the release provisions in Chapter 147 with proposed changes in the statutes governing release of defendants, and it was pointed out that these "housekeeping amendments" did not answer the question concerning a person arrested under a Governor's Warrant. Following a discussion of the best way to accomplish the commission's objective, Judge Charles Crookham, a Multnomah County Circuit Court judge and member of the commission, moved that the amended version of ORS 147.160 be adopted with the further amendment to place a period after the phrase "the security release or in the release agreement" and delete the balance of the section to allow the judge the option of releasing the defendant up to the time of his surrender upon the Governor's Warrant *or at a later time as specified in the release agreement.* Representative Paulus moved to adopt Judge Crookham's motion (with the additional deletion of the terms "before him"), and the motion to amend and adopt carried. Minutes, Criminal Law Revision Commission, October 2, 1972, at pages 35-38. The final draft of the proposed statute reflected these changes, Proposed Oregon Criminal Procedure Code, Final Draft and Report, 115, § 189 (1972), and the statute was enacted by the legislature without further relevant discussion, either in committee or on the floor.

The legislature's intended result does no violence to the overall purposes of the Uniform Act. The release of a prisoner upon a "security release agreement" after arrest under a Governor's Warrant accomplishes the result mandated by the provisions of the federal extradition statutes; i.e., the prisoner is "secured" for delivery over to the demanding state. 18 USC § 3182. While the legislature could have been more direct and thorough in its amendment of the act to accomplish this result,[7] the ambiguities pointed out by defendant do not require this court to construe the provisions of ORS 133.809 contrary to the legislature's expressed intent in amending the statute, and we decline to do so.

This conclusion is supported by the release policy of this state as evidenced by the provisions of Article I, § 14 of the Oregon Constitution granting the right to bail in all non-capital offenses[8] and by the provisions of ORS 135.230, *et seq,* governing release of defendants.[9]

---

[7] Although there was a suggestion made to the Criminal Law Revision Commission that there might be other ORS sections that would need to be corrected to conform to the Amendment of ORS 133.809, the committee, and the legislature, apparently failed to do so. Minutes, Criminal Law Revision Commission, October 2, 1972, page 37.

An example of such a section is ORS 133.813, which provides:

"If the accused is not arrested under warrant of The Governor by the expiration of the time specified in the warrant, security release or release agreement, the judge or magistrate may discharge him or may recommit him to a further day, or may again set a security release or a release agreement *for his appearance and surrender,* as provided in ORS 133.809; and at the expiration of the second period of committment, or if he has been released and appeared according to the terms of his security release or release agreement, the judge or magistrate either may discharge him or may require him to enter into a new security release or release agreement *to appear and surrender himself at another day."* (Emphasis supplied).

Much of the present ambiguity surrounding ORS 133.809 would have been avoided had the legislature deleted the emphasized terms in 133.813.

[8] Article I, § 14 of the Oregon Constitution provides:

"Offences (sic), except murder, and treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when proof is evident, or the presumption strong."

[9] The existing statutory provisions governing "bail" were revised as part of the revision of the Oregon Criminal Procedure Code in 1973 to delete all reference to "bail" and substitute the term "release" in order to show the change in philosophy in Oregon regarding the release of defendants. In the words of the commentators to Article 8, § 237 of the Proposed Oregon Criminal Procedure Code, Final Draft and Report at pages 134-135 (1972):

Denying consideration for release to one challenging the validity of arrest under a Governor's Warrant could, in effect, deny many persons a meaningful right to contest the validity of the Governor's Warrant. A person accused of a minor offense in the demanding state could be imprisoned in Oregon for a lengthy period of time if he chooses to exercise his right to contest the validity of his arrest. *See, Application of Haney,* 77 Idaho 166, 289 P2d 945, 948 (1955).

Although the majority of states that have considered the question have denied persons arrested under Governor's Warrants the right to bail *(see* annotations in 63 ALR 1460, 143 ALR 1354, and 56 ALR 2d, 668), many of these decisons deny the right to bail because of the absence of statutory authority, rejecting the argument that the prisoner is entitled to be considered for bail under the inherent power of the court in the administration of justice.[10] Cases addressing the right to release as based upon statutory authority have granted the right to bail, although the basis for the statutory authority varies. *Ex parte Quinn,* 549 SW2d 198 (Crim. App.Tex, 1977); *Application of Haney, supra,* 289 P2d at 947-948; *State v. Birnbach,* 184 La 215, 165 So 717 (1936); *People v. Baker,* 139 App Div 471, 124 NYS 47 (1910).

---

"The change in philosophy is not a change in the Constitution as the Constitution grants every criminal the right to be released by sufficient sureties. The change is in effecting this right to release by sufficient sureties. The Article creates the presumption of personal recognizance release which can be overcome by showing that the defendant is not likely to appear without more assurances.

"* * * * *

"The magistrate can make personal recognizance release or a conditional release or a security release. The type of release will be decided at a release hearing and result in a release agreement between the court and the defendant. A security release can be secured by the defendant's assets or the assets of a friend or relative, a surety."

[10] Some decisions which have granted bail hearing pending challenge of the validity of arrest under a governor's warrant have relied solely upon the court's inherent power in the absence of statute. *State ex rel Partin v. Jensen,* 279 NW2d 120, 124, 203 Neb 441 (1979); *West v. Janing,* 449 F Supp 548 (D Neb, 1978); *Winnick v. Reilly,* 100 Conn 291, 123 A 440 (1924). The federal district court in *West* held that a · person could not be arbitrarily denied a bail hearing solely because of a lack of statutory authority for release because "modern notions of due process and fundamental fairness militate against such a result."

It is the decision and order of this court that the plaintiff be released from custody at 5:00 o'clock p.m. on the 27th day of August, 1981, when he has executed a new Release Agreement on the same terms, conditions and security amount as imposed by the agreement of June 9, 1981, unless in the meantime the Washington County Circuit Court has given the plaintiff a hearing and has made a different release decision.