Argued and submitted June 26, affirmed August 14, 2002

STEVEN J. COLBY,
*Appellant,*

*v.*

S. Frank THOMPSON,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

97C-11729; A100800

52 P3d 1058

Eric M. Cumfer argued the cause and filed the briefs for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

## BREWER, J.

Plaintiff appeals from a judgment dismissing his petition for a writ of habeas corpus. He alleges that he is being unlawfully detained due to several statutory and constitutional violations committed by defendant. We review the trial court's decision for errors of law, ORS 34.710; *Bedell v. Schiedler*, 307 Or 562, 564, 770 P2d 909 (1989), and affirm.

Plaintiff was convicted in 1985 of first-degree manslaughter and criminal conspiracy, arising out of separate incidents in 1984. He was sentenced as a dangerous offender to 17½ years' incarceration, with a six-year minimum term on each offense, to be served consecutively. ORS 161.725. In September 1985, the Board of Parole and Post-Prison Supervision (board) set a parole consideration hearing date of August 30, 1996. ORS 144.228(1).

In April 1996, as part of plaintiff's parole consideration process, the board ordered him to undergo two psychological evaluations pursuant to ORS 144.226 (1995). Dr. Colistro evaluated plaintiff on April 19, 1996. In his report, received by the board on June 10, Colistro concluded that plaintiff "does not present as a serious threat to the safety and welfare of the community." Dr. Stuckey evaluated plaintiff on May 3, and the board received his report on May 29. In that report, Stuckey concluded that "[t]he results of the present psychological evaluation indicates that [plaintiff] has an emotional condition predisposing him to the commission of a crime to a degree rendering him a danger to the health and safety of the community."

On August 7, 1996, the board conducted a review of plaintiff's file to determine whether to set a new parole consideration hearing date. During its review, the board considered the reports of both doctors. The board concluded that plaintiff "remains dangerous," and it reset his parole consideration hearing date to August 30, 1998. It did not set a parole release date at that time. Plaintiff requested administrative review of the board's order, but he was denied relief.

Plaintiff filed this petition for a writ of habeas corpus alleging statutory and constitutional violations by the board

in its decision to defer consideration of plaintiff's parole for two years. The trial court issued the writ, defendant filed a return, and plaintiff filed a replication. Defendant then filed a motion to dismiss the writ, which the court granted. This appeal followed.

On appeal, plaintiff makes five arguments in support of his assignment of error that the court erred in dismissing the writ. First, plaintiff argues that the board violated ORS 144.228[1] by not making particularized findings concerning whether he could be adequately controlled in the community by means of reasonably available supervision and treatment resources. Second, he contends that the board violated ORS 144.226 by ordering and considering more than one psychological evaluation before his parole consideration hearing in 1996. Third, plaintiff argues that the board's application in 1996 of the then-current version of ORS 144.226 violated the *ex post facto* prohibitions of the United States and Oregon constitutions because that version gave the board more discretion to deny release of dangerous offenders than did the 1983 version in effect at the time plaintiff committed his crimes. Fourth, he argues that the board's application of the 1995 versions of ORS 144.226 and ORS 144.228 violated constitutional *ex post facto* prohibitions. He argues that those versions authorized the board to make a determination that a dangerous offender remained a danger to the community even if the psychiatrist or psychologist evaluating the offender concluded that the dangerous condition no longer existed, whereas the pre-1993 versions of the statutes did not accord the board that discretion. Finally, plaintiff argues that substantial evidence did not support the board's determination that he remained dangerous.[2]

---

[1] Unless otherwise noted, references in this opinion to ORS 144.226 and ORS 144.228 are to the 1995 versions of those statutes, the versions in effect at the time the board made its decision to delay plaintiff's parole consideration hearing. Similarly, unless otherwise noted, references to the board's rules are to the 1995 versions of those rules.

[2] In a supplemental brief, plaintiff acknowledges that this court concluded in *Hamel v. Johnson*, 173 Or App 448, 25 P3d 314, *rev den* 333 Or 162 (2001), that due process requires that there only be *some* evidence to support the board's conclusion in this regard. Assuming that that decision is correct, plaintiff argues, the reduction of the quantum of proof needed to defer parole release consideration violates

Defendant responds that plaintiff's first and second arguments fail to state claims for relief, because plaintiff is imprisoned pursuant to a valid judgment and, therefore, may not challenge his imprisonment on a subconstitutional ground in a habeas corpus claim. In the alternative, defendant contends that neither ORS 144.228 nor OAR 255-036-0005(2), a board rule implementing that statute, required the board to make additional findings and that ORS 144.226 did not preclude the board from ordering and considering more than one psychological evaluation. Defendant's response to plaintiff's third argument is that the law in effect at the time plaintiff committed his crimes did not preclude the board from ordering a second psychological evaluation and, even if it had, habeas corpus relief was not warranted because the second evaluation was actually more favorable to plaintiff than was the first. Defendant asserts, among other contentions, that plaintiff's fourth argument fails for the same reasons that defeat his third argument. Finally, relying on *Hamel v. Johnson*, 173 Or App 448, 25 P3d 314, *rev den* 333 Or 162 (2001), defendant asserts that there was some evidence to support the board's decision and that application of that evidentiary review standard does not violate *ex post facto* proscriptions.

■    We first address defendant's challenges to plaintiff's subconstitutional claims. As noted, defendant argues that where, as here, an inmate initially was imprisoned under a lawful judgment, only a violation of the inmate's constitutional rights will support a habeas corpus claim asserting that any continued imprisonment is unlawful. Defendant relies on *Bahrenfus v. Bachik*, 106 Or App 46, 806 P2d 170, *rev den* 311 Or 643 (1991). In *Bahrenfus*, the plaintiffs alleged that, although they were within the jurisdiction of the Psychiatric Security Review Board, they were deprived of "the right to treatment under Oregon statutes and administrative rules." 106 Or App at 49. The plaintiffs' habeas corpus claims were premised on the theory that, because treatment had been withheld, they were being subjected to an improper type of imprisonment that was "little different from a prison

---

*ex post facto* prohibitions. We address that argument in conjunction with plaintiff's fifth argument below.

inmate unlawfully placed in segregation or isolation." *Id.* at 49-50. We rejected that claim:

> "Plaintiffs do not allege any restrictions beyond the possibility that they may have to serve the full term of their original commitment. They are not entitled to habeas corpus relief on the ground that they might be released sooner than their original term if they were to receive diagnosis and treatment." *Id.* at 50.

Habeas corpus relief is available where (1) an inmate challenges the authority for his or her original or continued confinement, *see* ORS 34.360(2) ("If the challenge is to the authority for confinement, the petition shall state, in substance * * * [t]hat such person is not imprisoned or restrained by virtue of any order, judgment, decree or process specified in ORS 34.330."); *see also* ORS 34.610; (2) the person is lawfully confined but is being subjected to further unlawful imprisonment, *see Penrod / Brown v. Cupp,* 283 Or 21, 28, 581 P2d 934 (1978); or (3) the person is lawfully confined but is being "deprived of a constitutional right that requires immediate judicial attention and for which no other timely remedy is practicably available"—often referred to as a "conditions of confinement" claim. ORS 34.362(2); *see id.* at 28. Plaintiff's claim falls within the first category. Although plaintiff acknowledges that the judgment under which he initially was imprisoned was lawful, he asserts that his imprisonment is no longer lawful due to "errors of the board in refusing his release." He makes that claim pursuant to ORS 34.610, which provides, in part:

> "If it appears on the return that the prisoner is in custody by virtue of an order or civil process of any court legally constituted, or issued by an officer in the course of judicial proceedings before the officer, authorized by law, such prisoner shall be discharged * * * if * * *:
>
> "* * * * *
>
> "(2) The original imprisonment was lawful, yet *by some act, omission or event* which has taken place afterwards, the party has become entitled to be discharged." (Emphasis added.)

The parties' disagreement presents a statutory construction problem. *See PGE v. Bureau of Labor and*

*Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (describing statutory construction methodology). Based on an examination of the text and context of ORS 34.610, we conclude, for the following reasons, that where, as here, an inmate initially was imprisoned under a lawful judgment, a subconstitutional violation could, if the other requirements for habeas corpus relief are met, support a claim asserting that the inmate's continued imprisonment is unlawful.

First, the legislature expressly has provided that only deprivations of "a constitutional right" suffice to state a "conditions of confinement" claim under ORS 34.362(2). However, no such express limitation is imposed on a claim challenging the authority for the inmate's continued confinement under ORS 34.610. As noted, that statute confirms that an inmate can challenge the authority for his or her continued confinement—even though the inmate initially was incarcerated under a lawful judgment—if some later act, omission, or event has made continued confinement unlawful. By referring without restriction to "some act, omission or event," the statute places no limit on the permissible legal sources for claims that an inmate is entitled to discharge. Because the legislature expressly limited the application of ORS 34.362 to claims asserting the violation of a constitutional right, but did not so limit claims arising under ORS 34.610, we presume that the omission in the latter instance was purposeful. *See Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 382, 8 P3d 200 (2000); *State ex rel Juv. Dept. v. Tyree*, 177 Or App 187, 193, 33 P3d 729 (2001) ("The omission of other exceptions to the juvenile court's authority to set aside 'any order' is particularly significant and presumably was purposeful.").

Second, although the issue has not been squarely decided, the Supreme Court has, on more than one occasion, assumed that an alleged statutory violation was sufficient to support a claim for habeas corpus relief under ORS 34.610 where the plaintiff asserted that his or her continued imprisonment was unlawful. *See, e.g., Carden v. Barnes*, 291 Or 515, 635 P2d 341 (1981) (providing habeas corpus relief, in the form of release on bail, for violation of the plaintiff's statutory right to bail); *Haynes v. Burks*, 290 Or 75, 85, 619 P2d 632 (1980) (assuming, without deciding, that a statutory

right to security release could, if violated, be remedied in habeas corpus); *Owens v. Duryee*, 285 Or 75, 589 P2d 1115 (1979) (same).

Third, *Bahrenfus* is distinguishable from the circumstances here. There, this court held that the plaintiffs were "not entitled to habeas corpus relief on the ground that they might [have been] released sooner than their original term if they [had] receive[d] diagnosis and treatment." *Bahrenfus*, 106 Or App at 50. That holding was not based on a claim that the plaintiffs were entitled to immediate release. Instead, the plaintiffs claimed, based on *Penrod/Brown*, that they had been subjected to "further imprisonment" that made their situations "little different from a prison inmate unlawfully placed in segregation or isolation." *Bahrenfus*, 106 Or App at 50. In short, *Bahrenfus* did not address the type of claim plaintiff asserts here.

Because the text of ORS 34.610 contains no pertinent limitation, and the context of the statute suggests that the legislature intended none, we conclude that a subconstitutional violation could, if the other requirements for habeas corpus relief were met, support a claim under ORS 34.610, asserting that an inmate's continued imprisonment is unlawful.[3]

■       We turn to the merits of plaintiff's statutory violation arguments. Plaintiff first argues that the board violated ORS 144.228 and OAR 255-036-0005 by failing to make necessary findings as to whether he could be adequately controlled with supervision and treatment in the community. ORS 144.228 provided, in part:

"(1)(a)   Within six months after commitment to the custody of the Department of Corrections of any person sentenced under ORS 161.725 and 161.735 as a dangerous offender, the State Board of Parole and Post-Prison Supervision shall set a date for a parole consideration hearing instead of an initial release date as otherwise required under ORS 144.120 and 144.125. The parole consideration

---

[3] We do not understand defendant to argue separately that plaintiff's statutory violation claims fail to state claims for habeas corpus relief on the ground that they do not adequately allege plaintiff's entitlement to immediate release.

hearing date shall be the time the prisoner would otherwise be eligible for parole under the board's rules.

"(b)  At the parole consideration hearing, the prisoner shall be given a release date in accordance with the rules of the board if the board finds the prisoner no longer dangerous *or finds that the prisoner remains dangerous but can be adequately controlled with supervision and mental health treatment and that the necessary resources for supervision and treatment are available to the prisoner.* If the board is unable to make such findings, reviews will be conducted at least once every two years until the board is able to make such findings, at which time release on parole shall be ordered if the prisoner is otherwise eligible under the rules. In no event shall the prisoner be held beyond the maximum sentence less good time credits imposed by the court." (Emphasis added.)

OAR 255-036-0005 provided, in part:

"(2)  A person sentenced as a dangerous offender for felonies committed prior to November 1, 1989, is eligible for parole release:

"(a)  After having served the Board ordered prison term; and

"(b)  The Board finds the prisoner no longer dangerous; or

"(c)  The Board finds the prisoner remains dangerous but can be adequately controlled with supervision and mental health treatment and that the necessary resources for supervision and treatment are available to the prisoner."

Plaintiff argues that the statute and the implementing rule required the board, as a condition of declining to establish a parole release date, to affirmatively find both that he remained dangerous *and* that he could not be adequately controlled with supervision and treatment in the community. In support of that proposition, plaintiff relies on *Martin v. Board of Parole*, 327 Or 147, 957 P2d 1210 (1998). Plaintiff acknowledges that *Martin* is "not on all fours" with the present case, but he contends that "the broader holding of *Martin* is that when a statute specifically requires the board to make a finding or explain its reasoning, the board must do so and acts illegally if it does not."

For two reasons, plaintiff's reliance on *Martin* is misplaced. First, *Martin* is distinguishable from the circumstances here. There, the Supreme Court held that procedural provisions of the Oregon Administrative Procedures Act (APA), ORS 183.310 through ORS 183.500, required the board to give "some kind of an explanation connecting the facts of the case (which would include the facts found, if any) and the result reached" by the board. *Martin*, 327 Or at 157. *Martin* involved direct appellate review of a board order under ORS 144.335. That statute explicitly incorporates the judicial review standard of the APA set forth in ORS 183.482(8). ORS 144.335(3). *Martin* is thus inapplicable to judicial review of board action in habeas corpus proceedings, the requirements for which do not incorporate the findings requirements of the APA.

Second, the particular parole-related statutes and rules at issue here did not themselves include such a requirement: neither ORS 144.228 nor OAR 255-036-0005 required the board to make findings as to whether plaintiff could be adequately controlled in the community if it determined *not* to establish a parole release date. Rather, such findings were required only when the board decided to establish a parole release date for an inmate. Because the board decided not to establish plaintiff's parole release date, it did not violate ORS 144.228 or OAR 255-036-0005 by failing to make more particularized findings in support of its decision.

■     Plaintiff's second argument is that the board violated ORS 144.226 by requiring him to undergo two psychological evaluations before his parole review hearing in 1996. ORS 144.226(1) provided, in part:

> "Any person sentenced * * * as a dangerous offender shall within 60 days prior to the parole consideration hearing under ORS 144.228 or the last day of the required incarceration term established under ORS 161.737 and at least every two years thereafter be given a complete mental and psychiatric or psychological examination by a psychiatrist or psychologist appointed by the [board]. Within 60 days after the examination, the examining psychiatrist or psychologist shall file a written report of findings and conclusions relative to the examination with the Director of the Department of Corrections and chairperson of the [board]."

Plaintiff focuses on the word "a" in the phrase "a complete mental and psychiatric or psychological examination." He argues that the legislature's "[u]se of the indefinite article in this context shows that [it was] directing that only one psychiatrist or psychologist be appointed." We disagree.

Again, the parties' dispute presents an issue of statutory construction. *See PGE*, 317 Or at 610-11. The text and context of ORS 144.226 make clear that the legislature did not intend to limit the number of psychological evaluations that the board could order. It is true, as plaintiff observes, that "a" can mean "one." *Webster's Third New Int'l Dictionary*, 1 (unabridged ed 1993). However, its plain, ordinary meaning is not so limited. In addition to being "used as a function word before most singular nouns," it also can mean "ANY, EACH—used with a following restrictive modifier ‹a man guilty of kidnapping wins scant sympathy› * * *." *Id.* In turn, "any" can refer to "one," "some," or "all." *Id.* at 97; *see also State ex rel Juv. Dept. v. Kopp*, 180 Or App 566, 573, 43 P3d 1197 (2002). Accordingly, the legislature's use of the word "a" does not, itself, necessarily limit the number of psychological evaluations the board *may* order.

Although not addressed by plaintiff, we conclude that references to "[t]he examining psychiatrist" in ORS 144.226(2) and "[t]he written report of the examining psychiatrist" in ORS 144.228(2)(a) also do not establish that the board could order only one evaluation. The use of the definite article "the" in those provisions merely suggests that the legislature intended to refer to its original mention of "a" psychiatric or psychological evaluation examination in ORS 144.226(1). *See Osborn v. PSRB*, 325 Or 135, 142, 934 P2d 391 (1997) (holding that a statutory reference to "the" mental disease refers back to a disease mentioned in the previous paragraph of the statute).

Other language in the statute confirms that the legislature did not intend the limited meaning that plaintiff urges. ORS 144.226(1) provided that "[a]ny person sentenced * * * as a dangerous offender shall * * * *at least* every two years * * * be given a complete mental and psychiatric or psychological examination by a psychiatrist or psychologist appointed by the [board]." (Emphasis added.) The term "at

least" establishes a minimum number of evaluations that must be provided to a dangerous offender: at least one evaluation every two years. It is possible that the legislature contemplated that more frequent evaluations, if any, typically would occur in connection with an inmate's request for a parole consideration hearing "prior to * * * a two-year review." *See* ORS 144.228(1)(c). However, ORS 144.226(1) did not restrict the possibility of more frequent or more numerous evaluations to that circumstance. Rather, ORS 144.226(1) implicitly authorized the board to order multiple evaluations in connection with a single parole consideration hearing.

Finally, the purpose for obtaining mental health evaluations pursuant to ORS 144.226—to assist the board in making a parole consideration decision—militates against plaintiff's argument. The objective of a parole consideration hearing is to determine whether the condition that made the prisoner dangerous is absent or in remission. ORS 144.228(1)(b). That being so, it is difficult to imagine a plausible rationale for limiting, as a matter of law, the fund of information that the board may seek to obtain and rely on in making that determination, to the report of a single evaluator. We conclude that the board did not violate ORS 144.226 by ordering plaintiff to undergo a second psychological evaluation for use at his parole consideration hearing.[4]

■　　Plaintiff's third argument is that, assuming—as we have now decided—that the 1995 version of ORS 144.226 authorized the board to request more than one psychological evaluation, application of that version of the statute, rather than the 1983 version in force when he committed his crimes of conviction, violated *ex post facto* prohibitions of the United States and Oregon constitutions.

■■　　As pertinent here,

---

[4] Neither party suggests, nor do we conclude, that ORS 144.226 is ambiguous in this circumstance; therefore, we need not examine the statute's legislative history for further evidence of its meaning. We note in passing, however, that the singular usage upon which plaintiff relies initially appeared in a 1955 predecessor to the current statute. *See* Or Laws 1955, ch 636. The scant legislative history that is available sheds no light on the issue before us. *See Fleenor v. Williamson*, 171 Or App 599, 606, 17 P3d 520 (2000) (reviewing the meager legislative history of a statute despite the conclusion that it was unambiguous).

"[a] statute that punishes as a crime an act previously committed that was innocent when done, which makes more burdensome the punishment for a crime *after its commission* or which deprives one charged with a crime of any defense available according to law when the act was committed, is prohibited by the *ex post facto* guarantee." *Meadows v. Schiedler,* 143 Or App 213, 218, 924 P2d 314 (1996).

An *ex post facto* violation also can result from a change in administrative rules that makes the punishment of a crime more burdensome. *Peek v. Thompson,* 160 Or App 260, 266, 980 P2d 178, *rev dismissed* 329 or 553 (1999). Here, plaintiff does not assert that the statute itself was changed in relevant ways from the version in effect when he committed his crimes but, instead, argues that "the board's practice prior to 1993 was to allow only one evaluation, and that the board construed the statute to only allow one evaluation." Plaintiff cites no specific board practice or evidence of one to buttress that argument.

ORS 144.226 (1983)—the version of the statute in effect when plaintiff committed his subject crimes—is identical in all relevant respects to the 1995 version of that statute. It provided, in part:

"(1) Any person sentenced * * * as a dangerous offender shall within 60 days prior to the parole consideration hearing under ORS 144.228 and at least every two years thereafter be given a complete physical, mental and psychiatric examination by a psychiatrist appointed by the Superintendent of the Oregon State Hospital. Within 60 days after the examination, the examining psychiatrist shall file a written report of findings and conclusions relative to the examination with the Assistant Director for Corrections and Chairperson of the State Board of Parole."

For the reasons discussed in connection with plaintiff's second argument, we conclude that ORS 144.226 (1983) likewise did not prohibit the board from ordering multiple psychological examinations in connection with an inmate's parole consideration hearing.

■ Plaintiff next asserts that, regardless of the proper interpretation of ORS 144.226 (1983), by adopting OAR 255-38-005(3)(a) (1984), the board prohibited its own consideration of more than one psychological report in making a parole release decision involving a dangerous offender. *See Peek*, 160 Or App at 265 (holding that, where the board is vested with discretion by statute, it may limit its own discretion in its rules). OAR 255-038-005 (1984) provided, in part:

> "(1) Notwithstanding the provisions of Division 60, the Board shall not set a parole release date for a person sentenced under ORS 161.725 and 161.735 as a dangerous offender. The Board shall within six months after commitment to the custody of the Corrections [Division] set a parole consideration hearing instead of a parole release date as otherwise required by Division 60. The parole consideration hearing shall be at the earliest time the prisoner would be eligible for release. If the condition (e.g. psychiatric or psychological diagnosis of a present severe emotional disturbance, such as severe personality disorder indicating a propensity toward criminal activity) is still present, reviews will be scheduled at least every two years thereafter. If at the parole consideration hearing or a subsequent review the condition is determined to be absent or in remission, the Board shall set a release date or order parole if the prisoner is otherwise eligible under the rules.
>
> "* * * * *
>
> "(3) At any hearing or review, the Board shall consider the report of the executive officer of the facility in which the prisoner is confined regarding the prisoner's conduct, attitude, and work record as defined in ORS 144.228(2) and a psychiatric or psychological report received within two months of the hearing:
>
> "(a) The Board shall not set a parole release date unless the psychiatric or psychological report reveals that the severe emotional disturbance which has made the prisoner dangerous is no longer present.
>
> "(b) If the disturbance is present, the Board may defer release to a specified future time or deny parole * * *."

We disagree with plaintiff's interpretation of the rule. Subsection (3)(a) of the rule did not *prohibit* multiple evaluations. The subject matter of the rule was not concerned

with restricting the amount of information available to the board in making a parole release decision involving a dangerous offender. Instead, it limited the circumstances under which a dangerous offender could be released on parole. We do not presume that the board intended, by adopting a rule that addressed a different subject, to limit its statutory authority under ORS 144.226 (1983) to order and consider more than one psychological evaluation in making a parole release decision involving a dangerous offender.

*Peek* is not to the contrary. There, the board had adopted a rule declaring that it "shall affirm the parole release date" if a psychiatric or psychological "evaluation [did] not make a finding of severe emotional disturbance." *Peek*, 160 Or App at 264. We held that the board explicitly limited its discretion regarding the parole release date by using the word "shall." The language of the rule at issue here did not so limit the board's discretion in regard to the number of evaluations it was authorized to order.

■ Even if we were to construe the rule as plaintiff urges, though, plaintiff has not shown that he was prejudiced by the board's consideration of two reports. *See Meadows*, 143 Or App at 219-20 (holding that changes in the governing law that are "more onerous" to an inmate will support habeas corpus relief). Stuckey and Colistro drafted their reports on the same day, May 24, 1996. However, Stuckey's report—viewed by plaintiff as less favorable to him—was received by the board first on May 29, 1996. Although Colistro conducted his evaluation several weeks before Stuckey, the board did not receive Colistro's report—which plaintiff views as more favorable to him—until June 10, 1996. There is nothing in the record to suggest that the board requested Colistro's evaluation before it requested Stuckey's evaluation or that it received any information about Colistro's conclusions before it asked Stuckey to conduct an evaluation. Plaintiff does not explain why, under the circumstances, the board was required to consider only Colistro's report. Assuming that plaintiff's interpretation of the rule were correct, if anything, a better case could be made for the board's obligation to rely solely on Stuckey's report because it received that report first. At the very least, we are unable to say that the board's

review of plaintiff's eligibility for parole under the 1995 statute was "more onerous" to plaintiff than its review under the 1984 rule would have been.

■ Plaintiff's fourth argument is that the board's application of the 1995 versions of ORS 144.226 and ORS 144.228 violated *ex post facto* principles because those versions of the statutes allowed the board to make a determination that plaintiff remained dangerous even though an appointed mental health expert found that he was no longer dangerous, whereas the statutes in effect in 1984 did not authorize the board to override the expert's conclusion. Assuming, for the sake of argument, that plaintiff's interpretations of both sets of statutory versions—1984 and 1995—were correct, he would still not be entitled to habeas corpus relief. Like plaintiff's third argument, his fourth argument assumes that the board should have considered only Colistro's evaluation in making its release decision. Because we already have rejected that assumption, we need not further consider plaintiff's fourth argument. Plaintiff has not demonstrated that he was prejudiced by any asserted change in the relevant law after his convictions.

■ Plaintiff's final argument is that substantial evidence does not support the board's decision to defer his parole consideration date. Defendant responds that, under our decision in *Hamel*, the applicable standard of review is whether "some evidence" supported the board's decision. Defendant is correct.

In a supplemental brief, plaintiff broadens his fifth argument by asking us to reconsider our holding in *Hamel*. In the alternative, plaintiff argues that applying the "some evidence" standard would violate *ex post facto* provisions of the United States and Oregon constitutions, because the law in effect when he committed his offenses required that "substantial evidence" support the board's order. We decline plaintiff's invitation to reconsider our holding in *Hamel* and, therefore, turn to plaintiff's alternative argument.

The *ex post facto* clauses of both the United States Constitution and the Oregon Constitution impose limits on the power of the legislative branch of government to enact laws that make punishable an act that was not punishable at

the time it was committed or that make an act more severely punishable than it was when committed. *See* US Const, Art I, § 9, cl 3 ("No Bill of Attainder or *ex post facto* Law shall be passed."); Or Const, Art I, § 21 ("No *ex post facto* law * * * shall ever be passed."). This court's decision in *Hamel* was not a legislative enactment that made previously innocent acts criminal or enhanced plaintiff's punishment; instead, it was a judicial interpretation of the law that, at most, signaled a procedural change in our standard of review. Such a change does not constitute an *ex post facto* violation. *See Shelby v. Board of Parole*, 140 Or App 102, 112, 915 P2d 414, *rev den* 324 Or 18 (1996).

Because there is some evidence in the record to support the board's decision and application of that standard to our review of plaintiff's claims does not offend *ex post facto* principles, we reject plaintiff's fifth argument.

Affirmed.