Argued and submitted November 30, 2005, affirmed May 3, 2006

# KENYATTA ALEXANDER,
## *Petitioner,*

*v.*

# BOARD OF PAROLE
# AND POST-PRISON SUPERVISION,
## *Respondent.*

### A120078

134 P3d 1055

Irene B. Taylor, Deputy Public Defender, argued the cause for appellant. On the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, and Daniel M. Carroll, Deputy Public Defender II, Office of Public Defense Services.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Petitioner was convicted of sodomy and rape in the first degree in 1988 and was sentenced as a dangerous offender on the basis of a "severe personality disorder." In 2002, the Board of Parole and Post-Prison Supervision issued an order deferring his parole consideration date for 24 months. Petitioner seeks review of that order, advancing two arguments. First, he argues that the board erred in finding that the condition that was the basis for the dangerous offender sentence was not in remission. Second, he argues that, in any event, the board erred in relying on the opinion of a psychologist, as opposed to a psychiatrist, as the law in effect at the time of his offenses required. We affirm.

The relevant facts are not in dispute. Petitioner was, as we have noted, convicted of sodomy in the first degree and rape in the first degree, based on conduct that occurred in 1987 and 1988. The trial court sentenced him to consecutive 30-year dangerous offender sentences. ORS 161.725 (1987); ORS 161.735 (1987).

In May 2002, the board ordered that petitioner be evaluated by a psychologist, McGuffin. McGuffin determined that petitioner's Axis I disorders of alcohol and cannabis dependence were in remission but that he suffered from the Axis II disorder of antisocial personality disorder, characterized in his case by, among other symptoms, lack of empathy and insight, resentment of authority, low stress tolerance, and limited self-control, resulting in "unpredictable behavior" and a tendency to use physical force. McGuffin believed that it was unlikely that petitioner could be successfully supervised in the community and concluded that he presented a severe emotional disturbance such as to constitute a danger to the health or safety of the community.

In June 2002, the board held a parole consideration hearing in which it considered, among other evidence, McGuffin's evaluation. In determining whether petitioner met the substantive criteria for parole release, the board applied the versions of ORS 144.226 and ORS 144.228 in

effect at the time of petitioner's offenses.[1] Following the hearing, the board issued an order finding that petitioner suffered from a "mental or emotional disturbance, deficiency, condition, or disorder predisposing [him] to the commission of a crime"; that he therefore was a danger to the health or safety of others; and that "the condition which made [petitioner] dangerous is not in remission and [petitioner] does continue to remain a danger." The board deferred petitioner's parole consideration date. Petitioner filed a timely request for administrative review, but the board denied relief.

---

[1] ORS 144.226 (1987) provided, in part:

"(1) Any person sentenced under ORS 161.725 and 161.735 as a dangerous offender shall within 60 days prior to the parole consideration hearing under ORS 144.228 and at least every two years thereafter be given a complete physical, mental, and psychiatric examination by a psychiatrist appointed by the Superintendent of the Oregon State Hospital. Within 60 days after the examination, the examining psychiatrist shall file a written report of findings and conclusions relative to the examination with the Director of the Department of Corrections and chairperson of the State Board of Parole.

"(2) The examining psychiatrist shall include in the report a statement as to whether or not in the psychiatrist's opinion the convicted person has any mental or emotional disturbance or deficiency or condition predisposing the person to the commission of any crime to a degree rendering the person a menace to the health or safety of others. * * * The report shall also state the progress or changes in the condition of the examined person * * *."

ORS 144.228 (1987) provided, in part:

"(1)(a) Within six months after commitment to the custody of the Department of Corrections of any person sentenced under ORS 161.725 and 161.735 as a dangerous offender, the State Board of Parole shall set a date for a parole consideration hearing instead of an initial release date * * *. The parole consideration hearing date shall be the earliest time the prisoner is eligible for parole under the board's rules.

"(b) At the parole consideration hearing, the prisoner shall be given a release date in accordance with the applicable range and variation permitted if the condition which made the prisoner dangerous is absent or in remission. In the event that the dangerous condition is found to be present, reviews will be conducted at least once every two years until the condition is absent or in remission, at which time release on parole shall be ordered if the prisoner is otherwise eligible under the rules.

"* * * * *

"(2) For the parole consideration hearing, the board shall cause to be brought before it and consider all information regarding such person. The information shall include:

"(a) The written report of the examining psychiatrist which shall contain all the facts necessary to assist the State Board of Parole in making its determination. The report of the examining psychiatrist shall be made within two months of the date of its consideration[.]"

In his first assignment of error on judicial review, petitioner argues that the board erred in determining that the condition that made him dangerous was not absent or in remission. Specifically, petitioner argues that the record does not disclose the nature of the condition on which the trial court originally based his dangerous offender sentence, "let alone that that condition is present today." He also argues that only conditions categorized in the *Diagnostic and Statistical Manual of Mental Disorders* as Axis I disorders properly can be considered conditions likely to render a person dangerous and that his psychological evaluations either omit any mention of any Axis I disorders or characterize such disorders as in full remission.

The board first responds that petitioner's assignment of error is moot. The board reasons that, even assuming that it erred in finding that petitioner's condition was not absent or in remission, petitioner is entitled only to the setting of a parole release date "in accordance with the applicable range and variation permitted" by the relevant board rules and that, as demonstrated by the board's determination following petitioner's May 2004 parole consideration hearing that petitioner remained dangerous, he would not have qualified in 2002 for release under those rules.

On the merits, the board responds that substantial evidence supports the finding that petitioner is dangerous. The board points to McGuffin's May 2002 psychological evaluation, to petitioner's record of institutional behavior, and to his crimes of conviction. As to whether the board erred in relying on a condition or conditions other than those that formed the predicate for petitioner's sentence, the board argues that that challenge presents an issue of statutory construction as to which petitioner failed to exhaust his administrative remedies and that judicial review of that issue therefore is not available. On the merits of the latter issue, the board argues that the sentencing orders for petitioner's two convictions each state the court's finding that petitioner was "suffering from a severe personality disorder" and that the board's order at issue here relies on McGuffin's diagnosis of antisocial personality disorder. The board argues that, accordingly, even assuming that the "condition" referred to in

ORS 144.228(1)(b) (1987) must be the same condition that was the basis of the dangerous offender sentence, that requirement was met here.

We first consider whether petitioner's challenge is moot. In *Hamel v. Johnson*, 330 Or 180, 187-88, 998 P2d 661 (2000), the Supreme Court held that a petitioner's challenge to the validity of a 1997 board order postponing his parole release date from May 1997 to May 1999 did not become moot when, based on new evidence, including a psychological evaluation of the petitioner, the board issued a 1998 order further postponing the petitioner's scheduled release. That decision controls.

The board insists that *Hamel* is distinguishable. According to the board, the more pertinent decision is *Meriweather v. Board of Parole*, 140 Or App 415, 915 P2d 467 (1996), in which the board found that the petitioner's dangerous condition was not absent or in remission. *Id.* at 418. On judicial review, we determined that the petitioner's challenge was moot because, while judicial review was pending, the board issued a later order in which it made the same finding. *Id.* at 420 (citing *State ex rel Juv. Dept. v. Holland*, 290 Or 765, 767, 625 P2d 1318 (1981), for the proposition that a case becomes moot when, because of a change in circumstances prior to the appellate decision, the decision would resolve merely an abstract question without practical effect). The board acknowledges that *Meriweather* predates *Hamel*, but it contends that it remains good law and controls this case.

For the following reasons, we disagree with the board's contention that the circumstances here are such as to avoid the reasoning and result in *Hamel*. First, it is true that, should this court reject the board's finding that the condition that made petitioner dangerous was not absent or in remission, petitioner would be entitled only to the setting of a parole release date according to the criteria established in the board's rules. Nevertheless, that is greater relief than petitioner is entitled to should the board's order stand; in the latter event, petitioner is entitled only to another "review," that is, another parole review consideration hearing. ORS 144.228(1)(b) (1987).

■ Second, and more significantly, where ORS 144.228(1)(b) (1987) requires review of an offender's dangerousness at least once every two years, a finding that the relevant condition is absent or in remission logically requires that a parole release date be set for a date within two years of that finding, that is, before another review is required. Thus, had the board set a parole release date in its June 2002 order, there simply would have been no occasion for the May 2004 parole consideration hearing or the resulting order. *See Hamel*, 330 Or at 188; *see also Hamel v. Johnson*, 169 Or App 216, 218, 9 P3d 719 (2000), *disposition withdrawn on recons on other grounds*, 173 Or App 448, 25 P3d 314, *rev den*, 333 Or 162 (2001) (explaining on remand from Supreme Court that, if, at the time it issued the challenged order, the board lacked a valid reason to postpone the petitioner's parole release date, then it would have been obligated to release him on parole at that time and "there would have been no occasion for a second order"). Petitioner's challenge to the board's June 2002 order is not moot.

We turn to the merits of petitioner's first assignment. We begin by agreeing with the board that petitioner failed to raise in his administrative review request the legal issue whether the condition referred to in ORS 144.228(1)(b) (1987) must be the same condition on which the trial court based the offender's sentence. Petitioner therefore failed to exhaust his administrative remedies regarding that issue, and we do not consider it further. ORS 144.335.

■ That leaves the question whether substantial evidence supports the board's finding that petitioner is dangerous. ORS 183.482(8)(c). In his May 2002 psychological evaluation of petitioner, McGuffin stated that, in addition to interviewing petitioner, he reviewed his criminal records and administered a number of standardized psychological tests to him. McGuffin characterized petitioner as having "faulty" reasoning and judgment, resulting in an inability to "connect consequences to choices and behaviors." McGuffin also believed that petitioner's insight and his "understanding of his motives" were "limited." McGuffin reported that the psychological tests administered to petitioner indicated that he

"minimizes" and that he "may display unpredictable behavior and unusual thought patterns"; that he appeared resentful of authority; that he was "likely to have a history of * * * antisocial behavior, possibly including aggressive acts"; that he lacked empathy; that he had "low stress tolerance and limited self-control"; and that he "may seek to influence others by manipulation, threats, and physical force." As noted, McGuffin diagnosed petitioner as suffering from alcohol and cannabis dependence in sustained full remission in a controlled environment and from antisocial personality disorder. McGuffin noted that petitioner had completed a number of programs while incarcerated, including anger management programs; he also noted, however, that petitioner had committed numerous disciplinary violations. Relying particularly on petitioner's lack of empathy and his inclination "not to recognize boundaries of appropriate behavior," and believing that petitioner's "primary personality feature" was his "antisocial stance," he reported that it was unlikely that petitioner could be successfully supervised in the community.

McGuffin's report constitutes substantial evidence to support the board's finding that petitioner remained dangerous. The board therefore did not err in that regard.

In his second assignment of error, petitioner contends that McGuffin's evaluation does not meet certain requirements of the versions of ORS 144.226 and ORS 144.228(2) in effect at the time he committed his crimes. According to petitioner, the texts of those statutes demonstrate that the legislature intended that a person sentenced as a dangerous offender be evaluated by a psychiatrist, not a psychologist; that the person receive a "complete" evaluation of his or her physical condition; and that the evaluation also report the person's progress and changes in his or her condition. Petitioner also contends that the deficiencies in the proceedings in regard to those requirements resulted in a violation of his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The board responds that, in regard to those procedures, it properly applied the versions of ORS 144.226 and ORS 144.228 in effect at the time of the hearing and that performance of the evaluation by a psychologist was authorized

by those statutes. It also argues that, in any event, such evaluation was authorized by ORS 144.223 (1987), which was in effect at the time petitioner committed his crimes, which applied to "any" offender being considered for parole, and which referred to both psychiatrists and psychologists. The board argues that application of the current version of the statute reflects merely a change in procedure that does not implicate petitioner's rights under the Due Process Clause. Finally, it argues that, in any event, because the results of the evaluation demonstrated that petitioner was not "otherwise eligible" for parole release, it did not err in denying such release.

■ Petitioner is correct that, by their terms, ORS 144.226 (1987) and ORS 144.228(2) (1987) required that persons sentenced as dangerous offenders be evaluated for purposes of parole consideration hearings by a psychiatrist, as well as requiring that the person receive a complete physical examination and that the evaluation include a report of the person's progress. Nevertheless, the board did not err. The board is authorized under the current versions of the statutes to obtain an evaluation by either a psychiatrist or a psychologist. Nor, as explained below, does application of the current versions of the statutes violate defendant's rights under the Due Process Clause.[2]

■ Procedural due process imposes constraints on governmental decisions that deprive individuals of constitutionally protected liberty or property interests. *Griffin v. Board of Parole*, 201 Or App 21, 27, 116 P3d 930, *rev den*, 339 Or 610 (2005) (citing, *inter alia*, *Wilkinson v. Austin*, 545 US 209, 125 S Ct 2384, 162 L Ed 2d 174 (2005)); *see also Mathews v. Eldridge*, 424 US 319, 332, 96 S Ct 893, 47 L Ed 2d 18 (1976). In analyzing a claim under the Due Process Clause, we engage in a two-step inquiry: we decide, first, whether the individual has been deprived of a constitutionally protected interest and, second, whether " 'the procedures attendant upon that deprivation were constitutionally sufficient.' "

___

[2] Petitioner does not argue that application of the current version of the statute violates his rights under the state or federal *ex post facto* clause. *See, e.g.*, *Colby v. Thompson*, 183 Or App 311, 52 P3d 1058 (2002), *rev den*, 335 Or 180, *cert den*, 539 US 948 (2003).

*Davis v. Board of Parole*, 200 Or App 366, 370, 114 P3d 1138, *rev allowed*, 339 Or 700 (2005) (applying analysis to standard of proof used in parole proceeding; quoting *Kentucky Dept. of Corrections v. Thompson*, 490 US 454, 460, 109 S Ct 1904, 104 L Ed 2d 506 (1989)). Due process is flexible and calls for such procedural protections as the particular situation demands. *See, e.g., State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189-90, 796 P2d 1193 (1990). In determining what procedures are required in a particular proceeding, we consider (1) the individual interest at stake; (2) the risk of error, including the probable value of additional safeguards; and (3) the countervailing public interest. *Mathews*, 424 US at 335.[3] As pertinent here, due process requires that the individual be afforded an opportunity to be heard at a meaningful time and in a meaningful manner, *id.* at 333, that is, that the relevant factfinding procedures be constitutionally sufficient.

For the purposes of our analysis in this case, we assume, without deciding, that petitioner had a liberty interest in parole that is protected by due process. *Compare Greenholtz v. Nebraska Penal Inmates*, 442 US 1, 7, 99 S Ct 2100, 60 L Ed 2d 668 (1979) (no protected liberty interest in conditional release before expiration of valid sentence), *with Board of Pardons v. Allen*, 482 US 369, 381, 107 S Ct 2415, 96 L Ed 2d 303 (1987) (finding protected liberty interest in state parole statutes); *see also Sandin v. Connor*, 515 US 472, 483-84, 115 S Ct 2293, 132 L Ed 2d 418 (1995) (whether state statute or rule creates protected liberty interest depends not on whether provision is stated in mandatory or discretionary terms but on the nature of the interest at issue). The question then becomes whether the factfinding procedures in which the board engaged—including evaluation by a psychologist rather than a psychiatrist—comported with due process.

We conclude that they did. First, we assume that petitioner had a significant interest in an appropriate evaluation of his mental condition for the purpose of the standard for parole release set out in ORS 144.228(1)(b) (1987). Nevertheless, petitioner has not identified—and we do not discern—any meaningful risk of error regarding that evaluation

---

[3] Neither petitioner nor the board makes any specific arguments under the *Mathews* factors.

that would result from its being performed by a psychologist rather than a psychiatrist; nor, conversely, have we identified any meaningful additional safeguard that would be afforded by employing a psychiatrist. Thus, even if we also assume that the public has no significant countervailing interest—such as a financial interest—in employing a psychologist rather than a psychiatrist, our assessment of the relative interests at issue does not require us to conclude that petitioner's due process rights were violated. We apply the same analysis, and reach the same conclusion, in regard to the board's asserted failure to obtain a report of petitioner's physical condition, ORS 144.226(1) (1987), and the putative absence of information regarding petitioner's "progress," ORS 144.226(2) (1987).

Affirmed.