Argued and submitted June 11, reversed and remanded with instructions
November 4, 1998

## KRAIG MAYLON BEVERIDGE,
*Appellant,*

*v.*

## Dan JOHNSON,
Superintendent,
Snake River Correctional Institution,
*Respondent.*

(97-05-28829M; CA A99719)

967 P2d 1238

Leland R. Berger argued the cause and filed the brief for appellant.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Plaintiff brought a petition for a writ of habeas corpus, arguing that the Board of Parole and Post-Prison Supervision (board) unlawfully rescinded his parole release date. Defendant filed a return, and plaintiff filed a replication. With accompanying evidence, defendant moved to dismiss on the ground that plaintiff had failed to state or establish a claim for habeas relief. Plaintiff responded, also with evidence. Following a hearing at which plaintiff appeared with his attorneys, the trial court dismissed plaintiff's writ with prejudice. Plaintiff appeals. We review to determine whether the facts warrant habeas corpus relief, *see Bedell v. Schiedler*, 307 Or 562, 567, 770 P2d 909 (1989), and reverse.

On December 1, 1994, plaintiff began serving an eight-year indeterminate sentence on his conviction for attempted sodomy in the first degree. In January 1996, the board set plaintiff's parole release date for February 11, 1997, which was later moved to February 2. On January 24, 1997, the board issued a form order signed by "Presiding Member Middle." The second page gives no other names of board members and recites:

"Parole release date of 02/02/1997 is rescinded.

"Upon review of the file and pursuant to ORS 144.223, the board will schedule an exit interview with a current psychological evaluation for the subject as soon as possible.

"This action taken per file pass dated 01/24/1997.

"This Board action is for information only and is not subject to appeal."

Despite the above order, plaintiff was released on January 31.[1] When the release was discovered, an Order of Supervision Suspension and Detention was issued on March 12, and plaintiff was arrested on March 17.[2]

---

[1] February 2, 1997, was a Sunday; plaintiff was released on January 31 pursuant to ORS 137.375.

[2] On March 29, plaintiff's attorney submitted a letter to the board requesting that plaintiff remain on release status while the psychological evaluation was completed. The request was denied.

On May 6, Dr. Shellman evaluated plaintiff, and the board received his report on May 8. Shellman concluded: "In my clinical judgment, [plaintiff] does have an emotional disorder which would make him a danger to the community, if released at this time." On June 24, the board held an exit interview hearing at which plaintiff was represented by counsel. The board found that plaintiff had a "present severe emotional disturbance such as to constitute a danger to the health or safety of the community" and deferred plaintiff's release date an additional 24 months. That order notes that two board members were present.

On appeal, plaintiff's argument that he is unlawfully imprisoned rests on his contention that he was lawfully released on parole. He contends that there is no statutory or administrative authority for a board member alone or the board collectively to "rescind" a parole order by administrative file pass[3] for the purpose of an exit interview with a psychological evaluation. Plaintiff contends that the only authority for reconsideration of a parole order in which "the review would cause an adverse result for the prisoner" is by administrative hearing. OAR 255-80-012(3)(c).[4] Applying the reasoning of the dissenting opinion in *Murphy v. Board of Parole*, 143 Or App 605, 925 P2d 98, *rev den* 324 Or 464 (1996), plaintiff argues that the order rescinding the parole came within OAR 255-80-012(3)(c).

In *Murphy*, the board had rescinded the petitioner's parole release date without holding a hearing or conducting an exit interview. Subsequently, the board conducted the exit interview and deferred the inmate's release. *Murphy*, 143 Or App at 608. We did not decide whether the board violated its rules, holding that the only relief to which the inmate was entitled was a hearing and that the exit interview hearing met that requirement. The dissenting opinion would have reached the issue as to whether the board had violated its rules and concluded that it had. The dissent found that,

---

[3] Neither party explains the nature of or authority for an administrative file pass.

[4] The rules have been renumbered. We refer to the numbers used by the parties. The parties do not concern themselves with changes that may exist in the renumbered provisions, and so neither do we.

because the administrative file pass caused an adverse result for the petitioner in that it led to the order rescinding the petitioner's parole release date pending the new exit interview, the board had violated OAR 255-80-012(3)(c). *Id.* at 610. However, the dissent agreed that the only relief to which the petitioner was entitled was a hearing, which he had received. *Id.* Plaintiff argues that here, unlike in *Murphy*, the interview did not satisfy due process because it occurred after he had been released.

Defendant's position is that plaintiff was not released on parole and, therefore, the hearing that plaintiff received satisfied due process. The difficulty with defendant's position, however, is that, if, as plaintiff argues, the order rescinding his parole release date was unlawful, then plaintiff *was* released on parole pursuant to the earlier order. Under OAR 255-080-012(2), the board has the authority to "open a case for reconsideration of a finding" but it must do so according to the procedures set out in subsection (3). Under that subsection, if reconsideration would cause an adverse result for the prisoner, the review must be by administrative hearing. As the dissent recognized in *Murphy,* rescinding an order of parole could cause—as it did here—an adverse result for the prisoner.

■      Defendant does not dispute that the order rescinding plaintiff's parole date had an adverse effect on plaintiff but argues that OAR 255-080-012 is inapplicable. He contends that the rule applies to administrative review of board orders and that here the board did not conduct a review of its earlier order. Instead, defendant contends, the board "rescinded" the order entirely. We are not persuaded by defendant's semantic distinction. "Rescinding" a parole release date necessarily requires opening the case in order to reconsider the date originally found to apply. Here, a single board member rescinded plaintiff's parole release date by file pass, not by administrative hearing, as required by its rule.

Defendant argues, however, that apart from the requirement of the rule, the board has plenary authority to rescind its earlier order in the absence of statutes limiting its authority to do so. *SAIF v. Fisher*, 100 Or App 288, 291, 785 P2d 1082 (1990). Even assuming that the general proposition

on which defendant relies applies in the parole context as it does in the workers' compensation setting, the difficulty with his position is that here, as discussed above, OAR 255-080-012 provides restrictions on that authority. "Plenary authority" does not authorize the board's action here.

Defendant next cites ORS 144.125(4), ORS 144.223(1), and currently numbered OAR 255-060-0008, which he argues, authorize the board to rescind a parole release date pending a psychiatric evaluation, after failure of an inmate timely to submit a parole release plan.[5] Defendant argues that the rescinded order here was due to a failure in the plan. Defendant points to the affidavit submitted by Chairperson Middle averring that the reasons set out in the order rescinding plaintiff's parole release date are "not necessarily a total and complete statement of the reasoning behind a board decision." Middle averred that, as of January 24, the board had not received plaintiff's release plan and that, when it was received on January 29, the plan did not show that plaintiff had a place to live and that the plan was "otherwise incomplete, and entirely unacceptable for a sex offender."

---

[5] The statutes and rule on which defendant relies do not demonstrate the board's authority to *rescind* the parole date in order to conduct a psychological exam. ORS 144.223(1) provides:

"The [board] may require any prisoner being considered for parole to be examined by a psychiatrist or psychologist before being released on parole."

ORS 144.125(4) provides:

"Each prisoner shall furnish the board with a parole plan prior to the scheduled release of the prisoner on parole. The board shall adopt rules specifying the elements of an adequate parole plan and may defer release of the prisoner for not more than three months if it finds that the parole plan is inadequate. The Department of Corrections shall assist prisoners in preparing parole plans."

OAR 255-060-0008 provides, in part:

"(2) The board may defer parole release up to ninety (90) days from the parole release date when a plan is deficient or unverified in order to obtain verification or a satisfactory plan from the Department of Corrections.

"* * * * *

"(5) One member shall review and approve the release plan."

Under those provisions, an inadequate parole plan results in deferral of parole for three months, not rescission of parole.

■  However, we agree with plaintiff that Middle's "after the fact" averment does not demonstrate authority for the order. The rescission was done to conduct a psychological evaluation and exit interview. That is what the order clearly states: "[P]ursuant to ORS 144.223, the board will schedule an exit interview with a current psychological evaluation[.]" Furthermore, on this record, the board cannot claim that an inadequate plan was the reason for the rescission when the plan was not submitted to the board until January 29, five days after the order rescinding plaintiff's parole release date.

Defendant has not identified any authority for the board, either collectively or through one member, to rescind a parole release date for the purpose of conducting a psychological review. The remaining question, thus, is whether plaintiff's arrest and the extension of his parole release date following the post-release interview violated plaintiff's rights to due process. We conclude that it does.

■  There is no constitutional right to early release on parole before the expiration of a sentence. *Greenholtz v. Nebraska Penal Inmates*, 442 US 1, 99 S Ct 2100, 60 L Ed 2d 668 (1979). However, once paroled, a parolee has a liberty interest the termination of which is subject to an orderly process. *Morrissey v. Brewer*, 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972). No process was applied in this instance. The board had no authority to arrest and detain plaintiff: The Suspend and Detain Warrants, under which plaintiff was arrested, authorize arrest when a parolee has allegedly violated parole, ORS 144.331; ORS 144.340, and there is no allegation here that plaintiff had done so. Additionally, ORS 144.223 does not give the board authority to require plaintiff, who had already been validly paroled, to undergo a psychological evaluation to determine whether his parole should be revoked. Plaintiff has established a violation of his constitutional rights that requires habeas corpus relief. As no legal cause was shown supporting the continuation of plaintiff's imprisonment, plaintiff is entitled to a discharge from imprisonment pursuant to his original parole order. *See* ORS 34.590.

Reversed and remanded with instructions to enter an order discharging plaintiff from custody pursuant to parole release of February 2, 1997.