Argued and submitted April 29, affirmed June 22, petition for review
allowed December 20, 2005 (339 Or 700)

# ROBBIE T. DAVIS,
*Petitioner,*

*v.*

# BOARD OF PAROLE
# AND POST-PRISON SUPERVISION,
*Respondent.*

## A120534

114 P3d 1138

Walter J. Ledesma, Deputy Public Defender, argued the cause for petitioner. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Linder, Presiding Judge, and Haselton* and Ortega, Judges.

LINDER, P. J.

_____
* Haselton, J., *vice* Richardson, S. J.

## LINDER, P. J.

Petitioner seeks judicial review of an order of the Board of Parole and Post-Prison Supervision (board) in which the board deferred petitioner's parole consideration for 24 months. He asserts that the board's decision was not supported by substantial evidence and that the board applied the wrong standard of proof in evaluating the record. For the reasons that follow, we affirm.

Petitioner was convicted in 1992 of first-degree rape and first-degree burglary. On the rape charge, petitioner was sentenced as a dangerous offender to an indeterminate sentence not to exceed 30 years, with an underlying presumptive sentence of 60 months. *See* ORS 161.725(1). For the burglary conviction, petitioner was sentenced to six months, to be served consecutively to the sentence for the rape conviction.

On September 25, 2002, the board conducted a parole consideration hearing.[1] Petitioner was at that hearing and offered testimony. Based on the record developed at that hearing, including a psychological evaluation conducted in July 2002, the board found that petitioner had "a mental or emotional disturbance, deficiency, condition, or disorder predisposing [him] to the commission of any crime to a degree rendering the offender a danger to the health or safety of others; therefore, the condition which made [petitioner] dangerous is not in remission and [petitioner] does continue to remain a danger." Because of that finding, the board deferred petitioner's parole consideration date for 24 months.[2] Petitioner timely sought administrative review, and the board, applying a preponderance of the evidence standard, again concluded that there was "sufficient evidence in the record to support the board's" findings.

---

[1] Because petitioner was sentenced as a dangerous offender, the board scheduled a "parole consideration hearing instead of an initial release date as otherwise required under ORS 144.120 and 144.125." ORS 144.228(1)(a) (1991). At the parole consideration hearing, "the prisoner shall be given a release date" if the board finds that the "condition which made the prisoner dangerous is absent or in remission." ORS 144.228(1)(b) (1991).

[2] Currently, petitioner has not been released on parole, and his next parole consideration date is scheduled for November 25, 2006.

■ Petitioner now seeks judicial review, arguing that the board violated his due process rights by applying the preponderance of the evidence standard. According to petitioner, due process requires a higher standard of proof—that of clear and convincing evidence. Because petitioner disputes the board's legal conclusions, but not its factual findings, we review for errors of law. ORS 183.482(8)(a).

■ Preliminarily, the board argues that petitioner's challenge to the standard of proof that the board applied is not preserved. We disagree. When the board issued its initial order, the order did not identify the standard of proof that was applied. Rather, the board summarily stated its conclusion and informed petitioner that he could appeal the finding by completing an administrative review request form. Petitioner completed that preprinted form by checking certain boxes and indicating that he believed that substantial evidence did not support the board's determination that he was mentally ill and presented a continuing threat to the community. The board did not identify the standard of proof that it applied to its consideration of petitioner's parole status until it issued its order on administrative review—*i.e.*, the order that petitioner now challenges. As a result, this is petitioner's first opportunity to raise that issue. *See generally State v. DeCamp*, 158 Or App 238, 241, 973 P2d 922 (1999) (refusing to find a preservation problem when the trial court entered a post-judgment order "without holding a hearing and without having either the state or defendant present").

We turn, then, to petitioner's challenge to the standard of proof that the board applied. The Fourteenth Amendment provides, in part, that no state shall deprive a person of life, liberty, or property without due process of law. US Const, Amend XIV.[3] "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the * * * Fourteenth Amendment." *Mathews v. Eldridge*, 424 US 319, 332, 96 S Ct 893, 47 L Ed 2d 18 (1976).

---

[3] The Oregon Constitution does not contain a due process clause. *See State v. Wagner*, 305 Or 115, 145-46, 752 P2d 1136 (1988), *cert granted and vac'd on other grounds*, 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989) (refusing to construe Article I, section 10, of the Oregon Constitution as a due process clause); *Gallant v. Board of Medical Examiners*, 159 Or App 175, 183 n 6, 974 P2d 814 (1999).

When analyzing a claim under the Due Process Clause, the court must engage in a two-step inquiry: first, the court must decide whether the petitioner has been deprived of a liberty interest protected by the constitution; second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dept. of Corrections v. Thompson*, 490 US 454, 460, 109 S Ct 1904, 104 L Ed 2d 506 (1989).

 Considering first the alleged liberty interest at stake in this case, the United States Supreme Court has held that there is no constitutional right to parole. *Greenholtz v. Nebraska Penal Inmates*, 442 US 1, 7, 99 S Ct 2100, 60 L Ed 2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right."); *accord Beveridge v. Johnson*, 157 Or App 57, 63, 967 P2d 1238 (1998). However, a liberty interest in parole release may be conferred by virtue of a state statute. *Board of Pardons v. Allen*, 482 US 369, 381, 107 S Ct 2415, 96 L Ed 2d 303 (1987) (finding protected liberty interest in Montana parole statutes); *Greenholtz*, 442 US at 12 (finding protected liberty interest in Nebraska parole statutes); *cf. Hamel v. Johnson*, 173 Or App 448, 454, 25 P3d 314, *rev den*, 333 Or 162 (2001) (noting that " 'parole is in the nature of a grant of partial liberty or a lessening of restrictions to a convicted prisoner,' " but that "statutory entitlement to parole may, under some circumstances, create a liberty interest that is cognizable for purposes of" due process (citations omitted)). For purposes of our analysis in this case, we assume, without deciding, that Oregon statutes providing for parole release consideration have created a liberty interest protected by due process.[4]

---

[4] Before the United States Supreme Court's decision in *Sandin v. Conner*, 515 US 472, 115 S Ct 2293, 132 L Ed 2d 418 (1995), which determined whether a state had created a liberty interest for incarcerated persons protected by the Due Process Clause, the analysis focused on whether "statutes, administrative regulations, or published prison policy, rules, and regulations" used "specific, mandatory language," such as that found in the Oregon statute. *Bermudez v. Duenas*, 936 F2d 1064, 1067 (9th Cir 1991); *see also* ORS 144.228 (1)(b) (1991) (stating that the board

■ The second inquiry, then, is whether the state procedures for granting and denying parole comport with the requirements of due process. In particular, in this case, the question is whether due process is satisfied if the decision to deny parole is based on preponderant evidence, rather than a higher standard of proof. In *Santosky v. Kramer*, 455 US 745, 754, 102 S Ct 1388, 71 L Ed 2d 599 (1982), the United States Supreme Court considered whether, in a parental-rights termination proceeding, the Due Process Clause required a standard of proof higher than the preponderance standard that was mandated by a state law. The Court relied on the factors identified in *Mathews*, 424 US 319, noting that those factors applied generally to determinations regarding the constitutional burdens of proof in "particular proceeding[s]." *Santosky*, 455 US at 754. Those factors are: (1) the private interest at stake; (2) the risk of error, including the probable value of additional safeguards; and (3) the countervailing public interest. *Mathews*, 424 US at 335. The Court further explained that, "in any given proceeding, the [constitutional burden of proof] reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky*, 455 US at 755. Ultimately, the Court concluded that, because the possible injury to the individual was greater than the possible harm to society, the clear and convincing evidence standard of proof was required. *Id.* at 767-69.

---

"shall" give the inmate a release date "if the condition which made the prisoner dangerous is absent or in remission"). In *Sandin*, however, the Supreme Court curtailed that approach, stating that "such regulations [are] not designed to confer rights on inmates * * *." 515 US at 482. *Sandin*, however, involved *actual prison conditions* and regulations imposed within the sentence, not determinations that fall outside of the sentence, such as the decision to grant or deny parole. As a result, some courts have continued to apply the mandatory/discretionary dichotomy in cases involving parole. *See, e.g., Boutwell v. Keating*, 399 F3d 1203, 1213 (10th Cir 2005) (noting that the Court's decision in *Sandin* "did not resolve whether a parole statute that meets the *Greenholtz* and *Allen* test for creating a liberty interest necessarily satisfies *Sandin* or whether *Sandin* imposes an additional obligation"). In all events, we determine that, even assuming, *arguendo*, that Oregon's parole statutes have created a liberty interest, the board did not err in applying the preponderance of the evidence standard. *Accord Wilkinson v. Austin*, 545 US _____ , _____ , 125 S Ct 2384, 162 L Ed 2d 174 (2005) (acknowledging abrogation of *Greenholtz*, but stating that *Greenholtz* remains "instructive for [its] discussion of the appropriate level of procedural safeguards").

*Mathews* thus frames the analysis that we must apply here. Considering the first factor—petitioner's liberty interest in being released on parole—petitioner has already received "the full panoply of due process required to convict and confine," and those procedures need not be repeated in order to continue his confinement. *Greenholtz*, 442 US at 14. Accordingly, the potential that petitioner will remain incarcerated erroneously, albeit *within* the term of his imposed sentence, is only slight. Such an interest is more akin to not getting what one wants as opposed to losing what one already has. *Id.* at 10 ("[T]here is a human difference between losing what one has and not getting what one wants." (citations omitted)); *see also Wilkinson v. Austin*, 545 US ___ , ___ , 125 S Ct 2384, 162 L Ed 2d 174 (2005) ("Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all."). Petitioner's interest in that regard is significantly outweighed by the third *Mathews* factor—*i.e.*, the substantial countervailing interest in not releasing prematurely a dangerous offender into the community.

Neither does the second factor mandate a higher standard of proof. The board is required to consider "all information regarding such person." ORS 144.228(2) (1991). Such information includes psychiatric reports made within two months of consideration, a detailed report of the person's conduct while incarcerated, a statement as to the person's present attitude towards society and his previous criminal career, and the person's work and program record. *See id.* Given the volume of information that the board must consider before reaching a determination, imposing a clear and convincing standard of proof "would only incrementally increase the safeguards against erroneous factfinding in this proceeding." *Gallant v. Board of Medical Examiners*, 159 Or App 175, 185, 974 P2d 814 (1999); *accord Greenholtz*, 442 US at 16 (level of process due for inmates being considered for release on parole includes opportunity to be heard and notice of any adverse decision).

Thus, balancing the three factors, we conclude that the Due Process Clause requires no more than the preponderance of the evidence standard of proof in this case. Accordingly, the board did not err.[5]

Affirmed.

---

[5] Petitioner raises a second assignment of error challenging the board's decision on the ground that it is not supported by substantial evidence. He concedes that the evidence is sufficient under a preponderance standard and argues only that it is insufficient under a standard of clear and convincing evidence. Because we disagree that the board must apply a higher standard of proof than it did, we do not further consider petitioner's challenge to the adequacy of the record.