Argued and submitted January 31, affirmed August 3, petition for review denied December 13, 2005 (339 Or 610)

# ROCKY JOE GRIFFIN,
*Petitioner,*

*v.*

# BOARD OF PAROLE
# AND POST-PRISON SUPERVISION,
*Respondent.*

## A117349

116 P3d 930

Irene B. Taylor, Deputy Public Defender, argued the cause for petitioner. With her on the brief was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Ortega,* Judges.

HASELTON, P. J.

---

* Ortega, J., *vice* Richardson, S. J.

## HASELTON, P. J.

Petitioner seeks judicial review of an order of the Board of Parole and Post-Prison Supervision denying the restoration of good time credits after the revocation of his parole. He asserts that (1) the board erred in denying him a hearing on the restoration of his good time credits; and that (2) in making the decision to deny restoration of his good time credits, the board erred by applying rules that were not in effect at the time of his crime. We reject without discussion petitioner's second argument, and write to address only the claims concerning petitioner's entitlement to a hearing on the matter of restoration of good time. For the following reasons, we affirm.

Petitioner was convicted of attempted murder, first-degree robbery, and first-degree burglary in 1987. He received an indeterminate 20-year sentence with a 10-year judicially imposed minimum sentence. ORS 144.110. In 1988, the board upheld the judicial minimum and established a parole release date of January 14, 1997. Before petitioner was paroled, the board projected petitioner's "good time" date as July 31, 1999.[1] Petitioner was paroled in January 1997. Petitioner violated the terms and conditions of parole and was returned to prison in January 1999. At a future disposition hearing in July 1999, the board denied re-release on parole, based on a finding that petitioner could not be adequately controlled in the community, and established a new parole release date of October 26, 2003.[2] In September 2001, petitioner requested, via letter, that the board restore the good time that he had accumulated before his release on parole, and sought a hearing on the matter. The board responded that it was unable to consider restoring petitioner's good time because it had not received a recommendation from the superintendent of the prison

---

[1] "Good time" refers to statutorily authorized reductions in sentences for crimes committed before November 1, 1989. ORS 421.120.

[2] We note that petitioner actually was released on parole in October 2003. The present case is not moot, however, because if petitioner is correct that his good time date had passed by the time he was released, then he would be entitled to discharge from parole. *Erbs v. Board of Parole*, 90 Or App 253, 752 P2d 318 (1988).

where petitioner was incarcerated. The board received a negative recommendation from the superintendent shortly thereafter. On October 18, 2001, the board entered the order at issue in the present case, which provides in pertinent part that the board had received a negative recommendation from the superintendent and, upon review, "denies inmate's request for restoration of forfeited good time." Petitioner sought administrative review of that order, arguing in part that he was entitled to a hearing on whether his good time should be restored. On administrative review, the board concluded that petitioner was not entitled to a hearing, and denied relief. Petitioner then sought judicial review.

■    On judicial review, petitioner makes several arguments in support of his contention that the board was required to afford him a hearing before denying his request for restoration of forfeited good time credits. First, petitioner contends that OAR 255-080-0012(3)(c), as that rule was interpreted in *Beveridge v. Johnson*, 157 Or App 57, 967 P2d 1238 (1998), entitles him to a hearing under these circumstances. We disagree. OAR 255-080-0012 does not apply here. That rule provides:

"(1)   If the Board or its designee determines that the request for review is consistent with the criteria in OAR 255-080-0010 and the limits of 255-080-0011, the Board may open the case for review.

"(2)   The Board may open a case for reconsideration of a finding without receiving a request, without regard to time limits, and without opening all findings for review and appeal.

"(3)   The Board may conduct the review using the following methods:

"(a)   Administrative file pass, with the number of concurring votes required by OAR 255-030-0015; or

"(b)   Other administrative action by the Board or its designee, *e.g.*, to correct errors in the history risk score, crime category, credit for time served, inoperative time or adjusted commitment dates; or

"(c)   Administrative hearing, in cases where review would cause an adverse result for the prisoner.

"(4)    When the Board schedules an inmate/offender for an administrative review hearing and the inmate/offender has not received the Hearing Packet, the Board may proceed with the hearing, if the inmate/offender waives the right to adequate notice of the hearing and receipt of the Board Review Packet.

"(5)    The Board shall send the inmate/offender written notice of the Board decision and findings."

That rule must be read in the context of its neighboring rules, OAR 255-080-0010 and OAR 255-080-0011, which are cross-referenced in section (1) of the rule. OAR 255-080-0010 sets forth the criteria for granting administrative review of a board order;[3] OAR 255-080-0011 sets forth numerous limitations on the types of issues that may be considered in the review of prior board orders.[4] In fact, all of the

---

[3] OAR 255-080-0010 provides:

"The criteria for granting a review are:

"(1)  The Board action is not supported by evidence in the record; or

"(2)  Pertinent information was available at the time of the hearing which, through no fault of the offender, was not considered; or

"(3)  Pertinent information was not available at the time of the hearing, *e.g.*, information concerning convictions from other jurisdictions; or

"(4)  The action of the Board is inconsistent with its rules or policies and the inconsistency is not explained; or

"(5)  The action of the Board is in violation of constitutional or statutory provisions or is a misinterpretation of those provisions; or

"(6)  The action of the Board is outside its statutory grant of discretion."

[4] OAR 255-080-0011 provides:

"All administrative review requests will be screened by a Board member or a Board designee who may deny further review of the following matters:

"(1)  Findings of aggravation when the Board has set the prison term within or below the matrix range;

"(2)  Findings of aggravation when the Board has not overridden a judicial minimum and the prison term has been set equal to the judicial minimum;

"(3)  Matters which have previously been appealed and decided on the merits by either the Board or the appellate court(s);

"(4)  Administrative review requests considered untimely pursuant to rule 255-080-0005;

"(5)  Subject matter of a hearing or review and/or Board order other than the Board order being appealed;

"(6)  Matters that will not change the parole release date or conditions or length of supervision;

"(7)  Board orders that are not final;

rules in Division 80 of Chapter 255 pertain to board review of earlier orders. Petitioner contends that the board should have applied OAR 255-080-0012 in considering his initial request that his good time be restored. OAR 255-080-0012 does not apply to initial requests that the board take action on a matter.[5] It applies to the board's *review* of an earlier board order or action. In this case, there had been no prior board order or action concerning petitioner's good time when he submitted his request. Thus, at the point petitioner made his request, there was nothing for the board to "review" or "reconsider," as those terms are used in OAR 255-080-0012. Accordingly, OAR 255-080-0012 did not require that the board conduct a hearing on petitioner's request for restoration of good time credits.[6]

"(8) Errors previously corrected;

"(9) Order which sustains a minimum term and the inmate/offender does not contest the crime severity rating and history risk score;

"(10) Order which denies, grants or grants in part an inmate/offender's request for a prison term reduction based upon outstanding reformation under ORS 144.122;

"(11) Order which refers an inmate/offender for psychological evaluation;

"(12) Order which postpones an inmate/offender's release date because of:

"(a) A Board finding of dangerousness under ORS 144.125(3) and OAR 255-060-0012;

"(b) An inmate/offender's refusal to submit to a psychological evaluation;

"(13) Order which postpones an inmate/offender's release date because of serious misconduct during confinement; or

"(14) Order which denies an inmate/offender's request under ORS 144.228(1) for an early parole consideration hearing.

"(15) Order which sets an initial release date under ORS 144.120, except if inmate/offender contests the crime severity rating, the history risk score or aggravating factors found by the Board under Board rules;

"(16) Order which sets a date for a parole consideration hearing under ORS 144.228;

"(17) Order which sets a release date or declines to set a release date after a parole consideration hearing under ORS 144.228."

[5] This type of issue *can* arise in a board proceeding that is reviewable under OAR 255-080-0012. Under OAR 255-075-0097, OAR 255-075-0098, and OAR 255-075-0100, the board may consider restoration of good time credits at a future disposition hearing held within 60 days of the revocation of parole. That was not done in the present case. As noted above, petitioner's future disposition hearing was held several years before he requested restoration of good time credits.

[6] The procedural posture of *Beveridge* differed significantly. There, the board's original order established a parole release date. The board then reviewed and rescinded that order without holding a hearing. 157 Or App at 59. Under those circumstances, OAR 255-080-0012(2) was held to apply.

■ ■    Petitioner next contends that the failure to afford him a hearing on his request for restoration of good time violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Petitioner acknowledges that, in order to be entitled to such a hearing, he must establish that a constitutionally protected interest is involved. He asserts that he has a liberty interest in the restoration of his good time credits, not under ORS 421.120 (1985) but, instead, under a rule promulgated by the Department of Corrections (DOC), OAR 291-100-018(3) (1987). That rule provided:

> "Credit to Parole Violator for Good Time Earned Prior to Parole Release:
>
> "(a)  Upon return from parole, Good Time credits accrued by the inmate prior to his/her release on parole will be restored.
>
> "The Parole Board may approve or disapprove restoration of forfeited Good Time."

Procedural due process imposes constraints on governmental decisions that deprive individuals of constitutionally protected liberty interests. *Wilkinson v. Austin*, ___ US ___, 125 S Ct 2384, 162 L Ed 2d 174 (2005); *Davis v. Board of Parole and Post-Prison Supervision*, 200 Or App 366, 114 P3d 1138 (2005). As we noted in *Hamel v. Johnson*, 173 Or App 448, 454, 25 P3d 314 (2001), "statutory entitlement to parole may, under some circumstances, create a liberty interest that is cognizable for purposes of the Due Process Clause * * *." *See also Davis*, 200 Or App at 370 (assuming, without deciding, that Oregon statutes providing for parole release consideration have created a liberty interest protected by due process). In *Wolff v. McDonnell*, 418 US 539, 94 S Ct 2963, 41 L Ed 2d 935 (1974), the Supreme Court addressed an issue somewhat similar to that presented here. The Court analyzed the due process implications of a state statute that authorized prison superintendents to forfeit an inmate's good time credits in "cases of flagrant or serious misconduct" in the prison. 418 US at 546. An inmate did not, however, have any entitlement by statute or administrative rule to an evidentiary hearing on the matter. After noting that there exists no constitutional right to good time, the Court stated:

"[T]he State itself has not only provided a statutory right to good-time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing in every conceivable case of government impairment of a private interest. But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."

*Id.* at 557 (internal quotation marks and citations omitted). The Court then considered whether the procedures required for parole revocation hearings set forth in *Morrissey v. Brewer*, 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972), were required in the prison discipline context and held that they were not, because the deprivation of good time "does not then and there work any change in the conditions of [an inmate's] liberty," and because the state's interest in maintaining order in prisons is absent in the parole revocation context. *Wolff*, 418 US at 561-63. The Court ultimately concluded that due process entitled an inmate facing a disciplinary sanction of loss of good time to written notice of the claimed violation, written factual findings indicating the evidence relied on concerning the violation, and an opportunity to call witnesses and present documentary evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 563-66.

After careful consideration, we conclude that the type of hearing held to be required in *Wolff* is not required in the present context. Procedural due process is based on the notion that procedures that may result in the deprivation of certain constitutional rights provide fair notice of the nature of the issues and fair fact-finding procedures. Here, however, it is the automatic operation of ORS 421.120 (1985)—after a parole revocation hearing that complies with the due process requirements set forth by the Court in *Morrissey*—that

results in a parole violator's loss of good time credits. Thus, the only fact-finding required before petitioner lost his good time pursuant to ORS 421.120 (1985) was fact-finding that occurred in a parole violation proceeding in which petitioner had a full and fair opportunity to present evidence and legal arguments as to why his parole should not be revoked.

Here, petitioner appears to suggest that, although ORS 421.120 (1985) operated to take away his good time as a matter of law, OAR 291-100-018(3) (1987) operated to give it back as a matter of right—and that the board's decision not to restore his good time deprived him of what that DOC rule had given him. We disagree. Even assuming that petitioner is correct in his interpretation of OAR 291-100-018(3) (1987) as *requiring* the superintendent of a correctional institution to recommend to the board that good time be restored,[7] that rule could not, as a matter of law, have operated either to restore petitioner's good time credits or to require the board to accept the recommendation and authorize the restoration.

ORS 421.120 (1985) allows for restoration of good time only "when authorized by the State Parole Board[.]" That board, now known as the Board of Parole and Post-Prison Supervision,[8] is distinct from DOC, and the latter has no authority over the former. Thus, it follows that a rule promulgated by DOC, to the extent that it purports to supersede the board's authority regarding restoration of good time to a parole violator, is *ultra vires. See Sims v. Besaw's Café,* 165 Or App 180, 208 n 1, 997 P2d 201 (2000) (Edmonds, J., dissenting) (an *ultra vires* act is one performed without any authority to act on the subject). DOC lacks statutory authority to restore good time under these circumstances; only the board can do that. ORS 421.120 (1985). Indeed, OAR 291-100-018(3)(b) (1987) recognizes as much: "The Parole Board

---

[7] The board, in fact, appears to concede in the present proceeding that petitioner's reading of that rule is correct. *But see State v. Bea,* 318 Or 220, 224, 864 P2d 854 (1993) (court need not accept a party's concession concerning legal conclusion); *Lederer v. Viking Freight, Inc.,* 193 Or App 226, 236 n 6, 89 P3d 1199, *modified on recons,* 195 Or App 94, 96 P3d 882 (2004) (courts defer to an agency's reasonable interpretation of its own rules, but no such deference is owed to an agency's interpretation of another agency's rules). That ostensible concession has no bearing on our resolution of the present case.

[8] *See* Or Laws 1989, ch 790, § 22 (amending ORS 144.005 to change name of board).

may approve or disapprove restoration of forfeited Good Time." Thus, there is a fundamental flaw in petitioner's analysis: The board's action could not have deprived him of good time credits that DOC had restored to him, because any recommendation by DOC was simply insufficient, by itself, to effect such a restoration.

Finally, to the extent that petitioner's arguments touch on the question of whether OAR 291-100-018(3) (1987) required the superintendent to make a positive recommendation to the board, the present proceeding provides no avenue for relief. Here, only the board, and not DOC, is a party to the proceeding. Just as DOC cannot create an entitlement to restored good time when by statute that authority ultimately lies with the board, the board cannot compel the superintendent, a DOC official, to provide a positive recommendation concerning restoration of an inmate's good time. Thus, to the extent that petitioner requests relief in the form of a positive recommendation from the superintendent, that relief is not available in the present proceeding.

Under the circumstances presented here, petitioner was not entitled to a hearing on his request that the board restore good time credits that had been forfeited by operation of ORS 421.120 (1985) upon petitioner's parole violation.

Affirmed.