Submitted April 2, affirmed August 11, 2010

## PHILIP W. McCLURE,
### aka Phillip W. McClure,
*Petitioner,*

*v.*

## BOARD OF PAROLE
## AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A142139

237 P3d 879

Philip W. McClure filed the briefs *pro se*.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

■ Petitioner seeks review of a final order by the Board of Parole and Post-Prison Supervision (board) that postponed his parole release date for two years by finding that he suffered from a "present severe emotional disturbance such as to constitute a danger to the health or safety of the community." ORS 144.125(3) (1981).[1] Petitioner raises various contentions, including that the board and the psychologists who examined petitioner relied on inadmissible, prejudicial evidence that tainted their evaluations of petitioner. We disagree with petitioner and affirm the board's order.

In 1983, petitioner was sentenced to four consecutive 20-year prison terms after being convicted of first-degree rape, first-degree sodomy, first-degree robbery, and first-degree kidnapping for crimes that occurred in October 1982. At the time of the 1982 crimes, petitioner was on a parole release from a previous 1979 conviction for first-degree rape, for which he was sentenced to 20 years' imprisonment; petitioner had been on parole for four months when the 1982 crimes occurred.

In the last decade, petitioner's parole release dates have been repeatedly deferred. His most recent projected release date was scheduled for October 30, 2008. As part of the parole hearing, the board considered a psychological evaluation prepared by Dr. Shellman, which was based on a clinical interview, review of correctional records, and psychological tests, which included psychological instruments to

---

[1] ORS 144.125(3) (1981) provided, in part:

"If a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release until a specified future date."

Petitioner contends that the board's decision violates constitutional *ex post facto* protections because it did not apply the version of ORS 144.125(3) that was in effect at the time of petitioner's convicted offenses. *See Christenson v. Thompson,* 143 Or App 483, 484, 923 P2d 1316 (1996) (concluding that applying a version of ORS 144.125 to a prisoner whose offense was committed before the effective date of the statute violated *ex post facto* protections); *Meadows v. Schiedler,* 143 Or App 213, 219-21, 924 P2d 314 (1996) (same). Petitioner's offenses were committed in 1982; therefore, the 1981 version of ORS 144.125 applies in this case. Our review of the record confirms that the board properly deferred petitioner's parole pursuant to the 1981 version of ORS 144.125(3).

measure risk of violence and sexual violence. Shellman stated in his report that petitioner presented himself as being ready for parole, but Shellman concluded that petitioner lacked insight, had little empathy for the needs of others, and, although cooperative, appeared "somewhat manipulative and quite guarded during the interview." Shellman diagnosed petitioner under Axis I with "Atypical Paraphilia (forcible rape)" and under Axis II as "Mixed Personality Disorder with Antisocial and Narcissistic Features." Using two statistical measures, Shellman suggested that petitioner fell into the "moderate" to "high" range for risk of future violent behaviors. Given the above, Shellman could "only conclude that [petitioner] would continue to be a danger to the community if he were to be released at this time."

Petitioner also appeared before the board for an exit interview to answer questions concerning his crimes, the conditions that led him to reoffend, and his plans for anger management and sexual offender treatment. Following the interview, the board issued an order deferring petitioner's release date for two years, stating:

> "Based on the doctor's report and diagnosis, coupled with all the information that the board is considering, the board concludes that the inmate suffers from a present severe emotional disturbance that constitutes a danger to the health or safety of the community. The board has considered this matter under the laws in effect at the time of the committ[ed] offense(s)."

(Capitalization altered.) Petitioner sought administrative review of the board's decision, and, when relief was denied, sought judicial review in this court.

On review, petitioner raises several assignments of error. We write to discuss only whether the board's decision was based on tainted, inadmissible evidence from a 1979 court-ordered evaluation that petitioner argues invalidates the board's decision, and we reject all other assignments of error without discussion. We review the board's decision for errors of law. ORS 183.482(8)(a).

Petitioner's contention that the board considered inadmissible evidence involves the following facts. As part of his 1979 conviction, petitioner was ordered to submit to a

psychological evaluation (the 1979 evaluation), pursuant to ORS 161.725 (1979) and ORS 161.735 (1979),[2] to determine whether he was a "dangerous offender" for sentencing purposes. Petitioner was not found to be a dangerous offender. Pursuant to ORS 161.735(4) (1979), "No statement made by a defendant under this section * * * shall be used against him in any civil proceeding or in any other criminal proceeding."

Petitioner contends that, in violation of ORS 161.735(4), statements he had made in the 1979 evaluation were improperly included in a 1983 presentencing document labeled "Supplemental Presentence Investigation" (the 1983 report). Petitioner goes on to argue that, by relying on the 1983 report, subsequent board decisions and psychological evaluations, including Shellman's 2008 evaluation, are tainted by the inadmissible statements from the 1979 evaluation. Therefore, according to petitioner, the board's 2008 decision to postpone his parole is invalid because it relies on inadmissible, prejudicial information.[3]

---

[2] ORS 161.725 (1979) provided, in part:

"The maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS 161.735, that one or more of the following grounds exists * * *."

ORS 161.735 (1979) provided, in part:

"(1) Whenever, in the opinion of the court, there is reason to believe that the defendant falls within ORS 161.725, the court shall order a presentence investigation and a psychiatric examination. The court may appoint one or more qualified psychiatrists to examine the defendant * * *.

"* * * * *

"(3) * * * The psychiatrist shall file with the court a written report of his findings and conclusions, including an evaluation of whether the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity.

"(4) No statement made by a defendant under this section * * * shall be used against him in any civil proceeding or in any other criminal proceeding."

In this opinion, all references to ORS 161.725 and ORS 161.735 are to the 1979 versions of those statutes, unless otherwise stated.

[3] Petitioner relies on *U.S. v. Harrington*, 923 F2d 1371 (9th Cir), *cert den*, 502 US 854 (1991), and *Jones v. Cardwell*, 686 F2d 754 (9th Cir 1982). In *Harrington*, a federal district court used the defendant's statements from a psychiatric evaluation, which was ordered pursuant to ORS 161.735(1) (1989) in a prior state proceeding, while sentencing the defendant in a separate, later criminal proceeding. *Harrington*, 923 F2d at 1376-77. The Ninth Circuit concluded that the federal con-

However, the record does not support petitioner's underlying factual premise that the 1979 evaluation was ever used in violation of ORS 161.735(4). The 1979 evaluation is not part of the record; therefore, we cannot determine what, if any, information made its way from the 1979 evaluation to the 1983 report, let alone whether petitioner's allegedly inadmissible statements influenced the board's decision to postpone his parole. The record does confirm that, in January 1979, pursuant to ORS 161.735, the trial court ordered petitioner to undergo a psychiatric evaluation with Dr. Wilson. The 1983 report, however, does not mention Wilson or the 1979 evaluation he presumably prepared.

Petitioner also contends, without support in the record, that court-ordered psychological evaluations were prepared by Shiman and Cloyd. The 1983 report indicates that petitioner was "in counseling" with Shiman, but says nothing about counseling with Shiman being pursuant to ORS 161.735 or otherwise court ordered. Cloyd's name does not appear anywhere in the record, except in petitioner's own submissions over the years. On review, petitioner also submits an order for a psychiatric evaluation by Dr. Weissert. However, that order was not issued pursuant to ORS 161.735. Instead, it was issued pursuant to ORS 426.670 (concerning treatment of sexually dangerous persons), which does not provide for confidentiality or restricted future use.

Accordingly, even if we were to agree with petitioner that the board cannot consider his statements from the 1979 evaluation when determining whether to defer parole, we are unable to find any evidence in the record to support petitioner's contention that portions of the 1979 evaluation were actually incorporated into the 1983 report. Absent evidence that petitioner's statements from the 1979 evaluation improperly migrated into the 1983 report and into the record for petitioner's 2008 parole proceeding, we cannot say that

stitutional privilege against self-incrimination was violated because ORS 161.735(4) assured the defendant that his statements would not be used against him in any civil proceeding or in any other criminal proceeding. *Id.* In *Jones*, the Ninth Circuit concluded that the defendant's confessions during a court-ordered presentence probation interview were not voluntary and could not be used against him in sentencing without violating the defendant's Fifth Amendment rights. 686 F2d at 756-57.

the board's decision here, or any underlying psychological evaluation, was predicated on material that was inadmissible under ORS 161.735(4).

Affirmed.