Argued and submitted June 21, reversed and remanded September 21, 2016, petition for review denied February 16, 2017 (361 Or 100)

SIDNEY DEAN PORTER,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A156728 (Control), A158316

383 P3d 427

Andy Simrin argued the cause for petitioner. With him on the briefs was Andy Simrin PC.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**DEVORE, J.**

Petitioner killed a John Day police officer and later pleaded guilty to aggravated murder. ORS 163.095(2)(a)(A) (1991) (murder victim was police officer).[1] In this parole review case, petitioner challenges the orders of the Board of Parole and Post-Prison Supervision that rescinded his scheduled release date from prison and that, after the release date had passed, reconvened a hearing to extend the release date. Petitioner makes three assignments of error. He asserts that (1) the board erred in rescinding the release date, (2) the board erred in postponing the release date, and (3) the board erred in "reconvening" an exit interview after his release date had passed. We review the board's determinations for legal error, *McClure v. Board of Parole*, 236 Or App 606, 609, 237 P3d 879 (2010), *rev den*, 350 Or 241 (2011), and we reverse and remand.

In the early morning hours of April 8, 1992, Officer Ward arrived at petitioner's home on a domestic violence call. Petitioner had been drinking and had assaulted his wife. When Ward tried to intervene, petitioner attacked him. Petitioner bludgeoned Ward with his fists and a 10-pound piece of firewood. At some point, petitioner took and discarded Ward's gun outside the house. When other officers arrived, they found petitioner with blood on his hands and clothes. Ward was incapacitated, and, despite medical efforts to save him, he died soon thereafter.[2] In 1994, petitioner pleaded guilty to aggravated murder.[3] ORS 163.095(2)(a)(A).

At the time that petitioner was sentenced, ORS 163.105(1)(c) (1991) required the court to impose a life sentence with a 30-year minimum period of incarceration.[4]

---

[1] Throughout the opinion, reference to ORS 163.095 is to the version which became effective on August 5, 1991, and was in effect at the time petitioner committed the offense. *See* Or Laws 1991, ch 837, § 12.

[2] The autopsy revealed a skull fracture and contusions in Ward's brain.

[3] Petitioner pleaded guilty by *Alford* plea. *North Carolina v. Alford*, 400 US 25, 91 S Ct 160, 27 L Ed 2d 162 (1970).

[4] ORS 163.105(1)(c) (1991) provides:

"If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp."

The statute has been modified since then numerous times.

However, the board was required, after 20 years and upon a prisoner's petition, to "hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time." ORS 163.105(2) (1991); *see also Janowski/ Fleming v. Board of Parole*, 349 Or 432, 441-42, 245 P3d 1270 (2010). Petitioner submitted a petition, and, in July 2012, the board held a rehabilitation hearing. In an order known as a Board Action Form (BAF), dated July 18, 2012 (BAF #2), the board determined that petitioner had "satisfied the burden of proof *** and therefore *** is likely to be rehabilitated within a reasonable period of time and that the terms of confinement for the aggravated murder conviction should be changed to life imprisonment with the possibility of parole or work release." The board's order in July 2012 converted petitioner's aggravated murder sentence to life with the possibility of parole.

In November 2012, the board held a prison-term hearing. *See* ORS 144.120(1)(a) (1991). The board calculated petitioner's term of incarceration "under the matrix rules in effect at the time of his offense." *See Gordon v. Board of Parole*, 343 Or 618, 622-23, 175 P3d 461 (2007) (explaining matrix system as sentencing scheme adopted by the legislature in 1977). In its BAF #3, the board set a "projected parole release date" of June 7, 2013, following a period of incarceration of 254 months. In contemplation of that release date, the board required that petitioner complete a psychological evaluation and participate in an exit interview with the board. *See* ORS 144.223 (psychological examination of parole candidate).

On February 13, 2013, the board held the exit interview, as allowed by ORS 144.125 (1991).[5] The board observed that petitioner's psychological evaluation included a diagnosis of antisocial personality disorder and alcohol dependence in remission.[6] After considering the evidence, the board

---

[5] ORS 144.125(1) (1991) provides, in part:

"Prior to the scheduled release of any prisoner on parole and prior to release rescheduled under this section, the board may upon request of the Department of Corrections or on its own initiative interview the prisoner to review the prisoner's parole plan and psychiatric or psychological report, if any, and the record of the prisoner's conduct during confinement."

[6] The evaluating psychologist recommended against granting parole.

affirmed petitioner's release date of June 7, 2013. Its order, BAF #4, stated, in part:

"Based on the doctor's report and diagnosis, coupled with all the information that the Board is considering, the Board concludes that the inmate does have an emotional disturbance; however, the emotional disturbance is not presently so severe as to constitute a danger to the health and safety of the community. The Board has considered this matter under the substantive standard in effect at the time of the commitment offense(s) and all other applicable rules and laws."

On June 4, 2013, a few days before petitioner's planned release, the board issued an order that "rescind[ed] the parole release date" and "reopen[ed]" its prior decision.[7] The board's BAF #5 stated that the board "on its own motion, rescinds the parole release date of June 7, 2013, and pursuant to its authority in OAR 255-080-0012(2),[8] reopens Board Action Form (BAF) #4 for reconsideration. A new psychological evaluation will be obtained and the exit interview hearing will be reconvened * * *." The order was corrected in BAF #6. As a consequence, petitioner was not released on June 7, 2013.

On September 30, 2013, the board conducted a new exit interview and issued an order (BAF #7), in which the board reaffirmed its decision to rescind petitioner's release date.[9] Contrary to its prior finding in BAF #4, the board

---

[7] The board received a number of letters asking for reconsideration. For example, petitioner had told the board during his exit interview that he intended to rely on the assistance of a pastor in his community. That pastor submitted a letter stating that he was unwilling to serve petitioner in that capacity and that he wanted his name to be removed as the counselor on record. A district attorney's letter pointed to multiple contradictions in petitioner's account of the murder and in petitioner's history of domestic violence, as he had relayed those things to the board. Another letter suggested that the board "did not have access to the Autopsy Report" at the time of the hearing. That autopsy report was also inconsistent with petitioner's recollection of events.

[8] The rules have been renumbered since the time of petitioner's offense; nonetheless, throughout the opinion, we refer to the current numbers used by the parties. *Beveridge v. Johnson*, 157 Or App 57, 60 n 4, 967 P2d 1238 (1998).

[9] Petitioner states that BAFs numbered 5 and 7 are the subjects of this appeal. Those BAFs correspond with the orders dated June 4, 2013, and September 30, 2013. The state notes, however, that the board had construed petitioner's request for administrative review to be a challenge to BAF #6, "because it had issued BAF #6 to correct BAF #5, thereby replacing BAF #5." Accordingly, we understand petitioner to challenge BAFs numbered 5, 6, and 7.

found that petitioner "suffers from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community." The board extended petitioner's release date 24 months.

Petitioner sought administrative review of the board's decisions. On review, the board determined that it had authority under OAR 255-080-0012(2) to reopen the case for reconsideration and under OAR 255-080-0012(3)(c) to schedule a reopened hearing.[10] In response to petitioner's due process argument, the board concluded that it had provided adequate process by reconvening a hearing so that he could "present information and [respond] to the information submitted by others." The board explained in its second administrative review response that in reaching its new determination that petitioner had a present severe emotional disturbance, the board had considered and relied upon, at least in part, documents submitted after petitioner's February exit interview, including "the DA submission of documents showing a history of assault on [petitioner's] ex-wife." The board noted that it had "received and reviewed a large amount of significant information" and that it had relied on that "new information that was received."

Petitioner now seeks judicial review, contending, generally, that he was entitled to a hearing *before* the board rescinded his release date, or, in absence of that hearing, that he was entitled to be released under the earlier order. Making three arguments, he asks that the board's orders be reversed and remanded with instructions to reinstate the order affirming his release date. First, he contends that, by reopening the process and rescinding his release date, the board violated OAR 225-080-0012 and OAR 255-060-0006(1). Second, he contends that the board's action violated ORS 144.125 (1991) because the board did not postpone his release date for a permissible reason under that statute. Third, he contends that the board violated his constitutional

---

[10] OAR 255-080-0012(2) provides, "The Board may open a case for reconsideration of a finding without receiving a request, without regard to time limits, and without opening all findings for review and appeal."

OAR 255-080-0012(3)(c) provides that when a case is reopened for reconsideration, the board may conduct the review through an administrative hearing "in cases where review would cause an adverse result for the prisoner."

rights to due process under the Fourteenth Amendment to the United States Constitution by depriving him of a liberty interest—that is, his scheduled release date.

We begin by describing the statutory scheme applicable to this case. At ORS 144.245(1) (1991), Oregon statute requires that, "when the parole board 'has set a date on which a prisoner is to be released upon parole, the prisoner shall be released on that date unless the prisoner on that date remains subject to an unexpired minimum term.'" *Engweiler v. Persson / Dept. of Corrections*, 354 Or 549, 563, 316 P3d 264 (2013) (quoting ORS 144.245(1)). Release is not guaranteed to an inmate under that statutory provision, because, under ORS 144.125 (1991), "[p]rior to the scheduled release of any prisoner on parole * * * the board may * * * on its own initiative interview the prisoner to review the prisoner's parole plan and psychiatric or psychological report, if any, and the record of the prisoner's conduct during confinement." That review process "exists to ensure that offenders are not released to parole unless and until the board is satisfied that their release is consistent with community safety." *Engweiler*, 354 Or at 567.

The board's review process, however, is bound by statutory limitations. The Supreme Court has explained:

> "Once a [release] date is set, it can be postponed *only for three statutorily prescribed reasons*. First, under ORS 144.125(2) (1985), the board must postpone a prisoner's release date if it finds that the prisoner had engaged in serious misconduct during confinement. The board also is permitted, but not required, to postpone a release date if the prisoner received a psychiatric or psychological diagnosis of a severe emotional disturbance that would make him a danger to the community, ORS 144.125(3) (1985), or if it deems the prisoner's release plan to be inadequate, ORS 144.125(4) (1985)."

*Janowski/Fleming*, 349 Or at 457 (emphasis added); *see also Stogsdill v. Board of Parole*, 342 Or 332, 336, 154 P3d 91 (2007) (petitioner "entitled to be released unless the board is persuaded that he has a present severe emotional disturbance that constitutes a danger to the health or safety of the community"). Therefore, "[i]n the absence of one of those

[three] grounds for postponement, the inmate has a legal right to release on the scheduled release date." *Gordon*, 343 Or at 622 (citing ORS 144.245(1); *Hamel v. Johnson*, 330 Or 180, 187, 998 P2d 661 (2000)).[11]

In this case, the board had set a release date for June 7, 2013. Just before, the board summarily "rescinded" and, as a practical consequence, postponed that release date without prior notice or hearing.[12] The board did so, at that time, without making one of the three determinations necessary under ORS 144.125(1) (1991) for an extension of a release date. The state argues that the board had the authority to do so under OAR 255-080-0012.[13] By its own terms, that administrative rule does not authorize the board to rescind a release date without a hearing. *Beveridge v. Johnson*, 157 Or App 57, 62-63, 967 P2d 1238 (1998). And, a faulty procedure is not excused by invoking the need for a belated psychological exam. *Id.* at 62 n 5. (ORS 144.125(4), ORS 144.223(1), and OAR 255-060-0008 "do not demonstrate the board's authority to *rescind* the parole date in order to conduct a psychological exam" (emphasis in original)). The state does not identify any other authority permitting it "to rescind a parole release date for the purpose of conducting a psychological review." *Id.* at 63. Therefore, the board's order rescinding petitioner's release date under OAR 255-080-0012(2) and reopening the case for reconsideration under OAR 255-080-0012(3)(c) was in error. *See Talbott v. Teacher Standards and Practices Comm.*, 260 Or App 355, 373, 317 P3d 347 (2013) ("We accept any 'plausible interpretation' by an agency of its own administrative rule as long

---

[11] In 1985, ORS 144.245(1) made explicit the inmate's right to release on his or her release date. *Gordon*, 343 Or at 622 n 3 (citing Or Laws 1985, ch 53, §§ 2, 3).

[12] The state notes that reconvening a hearing before the June 7 release date would have forced the board to violate multiple notice provisions. *See* OAR 255-030-0013(1) (requiring 14-day notice before a hearing); *see also* ORS 144.750(2) (requiring 30-day notice to the district attorney and the victim before a hearing).

[13] The state contends that the board did not violate administrative rules, as petitioner contends, because "OAR 255-080-0012(2) and (3) demonstrate that 'opening' a previous decision for reconsideration—which is all that the June 4 order accomplished—is distinct from 'reviewing' or reconsidering that decision." We reject that argument without discussion. *Beveridge*, 157 Or App at 61 (rejecting similar argument and concluding that "'[r]escinding' a parole release date necessarily requires opening the case in order to reconsider the date originally found to apply").

as the interpretation is not 'inconsistent' with * * * any other source of law."). Compliance with ORS 144.125(1) (1991) was necessary.

The state relies on our decision in *Murphy v. Board of Parole*, 140 Or App 642, 643, 915 P2d 489, *modified on recons*, 143 Or App 605, 925 P2d 98, *rev den*, 324 Or 464 (1996), to argue that we should nevertheless affirm, because petitioner was later given the hearing to determine whether he had a psychological diagnosis of a present severe emotional disturbance that would make him a danger to the community.[14] The state's reliance on *Murphy* ignores subsequent changes in the law regarding the proper remedy in cases in which a petitioner's release date has elapsed. In a later case, *Hamel*, 330 Or at 187-88, the Supreme Court explained:

> "[A]fter petitioner had arrived in the corrections facility, the Board held a hearing to set his initial parole release date. Applying the matrix range, the Board set May 29, 1997, as petitioner's initial release date. Under ORS 144.245(1), the Board was required to release petitioner on parole on that date unless the Board identified a valid reason for postponing his release. In 1997, the Board issued an order identifying one of the statutory reasons for postponing petitioner's parole release date, namely, that he suffered from 'a present severe emotional disturbance [*sic*] that constitutes a danger to the health or the safety of the community.'

---

[14] In *Murphy*, the petitioner sought review of an order that had rescinded his release date without a hearing. 143 Or App at 607. As detailed in a dissenting opinion of this court, the board had set his release date as December 24, 1993, held exit interviews with him, and—despite a psychological evaluation, concluding that the petitioner had a present severe emotional disturbance that constituted a danger to the community—reaffirmed his release date. *Id.* at 609 (Armstrong, J., dissenting). "On December 17, 1993, the Board issued an order rescinding petitioner's December 24, 1993, parole release date and indicating that it would schedule an exit interview to reconsider petitioner's [release date]." *Id.* (Armstrong, J., dissenting). The board later held a new exit interview and reconsidered the psychological evaluation, in addition to "new information that it had not considered at the [previous] * * * exit interviews." *Id.* (Armstrong, J., dissenting). On appeal, petitioner asked us "to reverse the order and to remand with specific instructions that the Board release him." *Id.* at 607. We concluded that the board had erred, but, because the petitioner had ultimately received a hearing and was denied release for a permissible reason, he was not entitled to any further remedy. *Id.* at 608. In other words, the petitioner "was entitled to a hearing, not to release no matter what result the hearing produced," and he had received that hearing, albeit belatedly. *Id.* at 611-12 (Armstrong, J., dissenting).

"In his habeas corpus petition, petitioner alleged that the reason that the Board gave for postponing his release date was not valid. * * * [U]nder ORS 144.245, the Board *was required to release petitioner on parole on the scheduled release date unless it had a valid reason for postponing that release date.* Respondent does not contend that petitioner was subject to an unexpired minimum term. Therefore, if petitioner were to prevail on his claim that the Board's reason for postponing his release date under ORS 144.125(3) was not valid, then the Board should have released him on parole on May 29, 1997, and his continued imprisonment is unlawful. The Board is not entitled to rely on evidence and reasons that it acquired after that date to justify its decision not to release petitioner then. In other words, * * * the Board could not rely on petitioner's 1998 psychological evaluation to justify its decision to postpone petitioner's 1997 parole release date."

(Emphasis added.) We have understood *Hamel* to mean that, "if a release date was scheduled and elapsed without the board *first* having found a valid reason to postpone release, but the inmate was erroneously not released, later events cannot furnish a basis for postponing release; the inmate is entitled to immediate release." *Rivas v. Persson,* 256 Or App 829, 835-36, 304 P3d 765 (2013), *rev dismissed,* 354 Or 841 (2014) (emphasis added).

Likewise, in this case, the board lacked authority to postpone petitioner's release date, absent a timely hearing and a timely finding under ORS 144.125 (1991). After that release date had passed, it does not suffice to later find a reason to have postponed his release. *See Atkinson v. Board of Parole,* 280 Or App 410, 419, 382 P3d 567 (2016). The board failed to release petitioner on his scheduled release date. Therefore, we reverse and remand with a direction that the board reinstate petitioner's release date as last lawfully provided in BAF #3 and #4.

Reversed and remanded.